**WESTWIND EXPLORATION, INC., Petitioner,**

v.

**HOMESTATE SAVINGS ASSOCIATION, Respondent.**

**No. C–3872.**

Supreme Court of Texas.

Sept. 18, 1985.

Norvell & Connally, Don M. Connally, Abilene, for petitioner.

Shrader & York, Paul D. Clote, Houston, Moore, Dickson, Roberts & Ratliff, R. Temple Dickson, Sweetwater, for respondent.

RAY, Justice.

We must decide whether Homestate Savings Association wrongfully dishonored the letter of credit presented by Westwind Exploration, Inc. The trial court, based on jury findings, rendered judgment in favor of Westwind for $124,000 plus interest and attorney's fees, holding that Homestate wrongfully dishonored the letter of credit. The court of appeals, with one justice dissenting, reversed the judgment of the trial court and rendered judgment that Westwind take nothing from Homestate. 684

S.W.2d 788. We affirm the judgment of the court of appeals.

In 1982, Westwind was selling crude oil to the International Crude Corp. (ICC). In the course of business, ICC applied for a letter of credit with Homestate for the benefit of Westwind. On August 3, 1982, Homestate issued a letter of credit, which in pertinent part provided:

We hereby issue our irrevocable Letter of Credit No. 321:

Beneficiary: Westwind Exploration, Inc. Abilene, Texas

Amount: Approximately U.S. dollars: One Hundred Twenty-Four Thousand ($124,000.00)

Expiry: September 27, 1982 in U.S.A.

Applicant: International Crude Corp. Abilene, Texas

Funds under this Letter of Credit are available to you against your draft(s) drawn on us, but not prior to September 22, 1982, mentioning thereon our Letter of Credit No. 321 accompanied by the following:

(1) Your officially signed statement by an officer of Westwind Exploration, Inc. certifying that the amount drawn hereunder represents balances due them from International Crude Corp. has been outstanding for more than 24 hours and has not been received.

(2) Copy of run statements/tickets evidencing delivery of crude oil to International Crude Corp. during the month of August, 1982.

(3) Beneficiary can draw only on the amount due them, after any or all taxes connected with this oil are deducted by International Crude Corp.

We hereby engage with drawers that drafts drawn under and in compliance with the terms and conditions of this letter of credit will be duly honored upon presentation.

This letter of credit is subject to the Uniform Customs and Practice for Documentary Credits (1974 Revision) International Chamber of Commerce Brochure No. 290.

Genuinely,

/s/

R. Scott Davis

Senior Vice President

Homestate Savings Association

The letter of credit was amended twice, first to extend the expiration date to October 28, 1982, and again to further extend the expiration date to November 29, 1982. Both amendments included the following provision that: "All other terms and conditions shall remain the same."

By a letter dated November 26, 1982, Westwind presented the letter of credit to Homestate for payment of $124,000. According to the letter, this figure represented the balances due to Westwind by ICC that had been outstanding for more than twenty-four hours and not yet received by Westwind. This letter was accompanied by nine crude oil run statements evidencing quantities of crude oil delivered to ICC from Westwind in July, August, September and October of 1982. The letter also contained a statement that the $124,000 sum constituted the amount due after taxes to Westwind for the crude oil delivered.

Homestate, however, dishonored Westwind's presentment of the letter of credit because Westwind attempted to collect for crude oil delivered in months other than August 1982. This lawsuit followed and the trial court awarded Westwind $124,000 plus interest and attorney's fees from Homestate based on the jury's finding that Homestate "wrongfully refused to pay Letter of Credit # 321." The court of appeals reversed the trial court judgment and rendered judgment for Homestate. That court held that the construction of the letter of credit was a legal question and that "as a matter of law, Westwind did not strictly comply with all terms and conditions of the letter of credit." 684 S.W.2d at 791. The dissent countered that strict compliance was a jury question and that "Homestate's obligation to Westwind [was] not restricted to payments of balances for August only." *Id.* at 792.

■ A letter of credit is an instrument that obligates the issuer to pay a sum of

money to the beneficiary upon the beneficiary's proper presentment of the letter. *See Republic Nat'l Bank v. Northwest Nat'l Bank,* 578 S.W.2d 109, 112 (Tex. 1978). The drafting of a letter of credit involves three parties; the account party, the beneficiary and the issuer. Normally, the account party and the beneficiary are conducting business as buyer and seller respectively. If the seller refuses to rely solely on the buyer's credit, then a letter of credit can be employed to substitute the issuer's credit for the credit of the buyer. *See* H. Harfield, Bank Credit and Acceptances 31 (1974).

Accordingly, the usual letter of credit situation involves three functionally related, but legally separate agreements. The first agreement is between the buyer/account party and the seller/beneficiary involving the underlying transaction. The second agreement is between account party and the issuer whereby the issuer agrees to lend its credit to assist the account party. The third agreement, or the letter of credit, is between beneficiary and the issuer. *See Republic Nat'l Bank,* 578 S.W.2d at 112.

 The issuer's liability on a letter of credit is contingent upon the beneficiary's proper presentment of the letter. Tex.Bus. & Comm.Code Ann. § 5.114(a) (Vernon 1968). Proper presentment of a letter of credit occurs when the beneficiary strictly complies with the terms of the letter. *Temple-Eastex, Inc. v. Addison Bank,* 672 S.W.2d 793, 795 (Tex.1984). Upon presentment, the issuer deals only with documents and is completely isolated from the underlying transaction. Thus, disputes between the account party and the beneficiary concerning the underlying transaction are of no concern to the issuer. *See id.; Republic Nat'l Bank,* 578 S.W.2d at 114. If there is strict compliance with the terms of the letter of credit by the beneficiary, then the issuer has no option other than to pay the beneficiary according to the terms of the letter.

The cause at bar presents two issues for our determination. First, is strict compliance a question of fact for the jury or a question of law for the court? And second, if strict compliance is a question of law, did Westwind strictly comply with the terms of the letter of credit upon its presentment of the letter to Homestate?

 Westwind argues that strict compliance is a fact issue and thus, the jury's finding of Homestate's wrongful dishonor should be reinstated. We disagree. As we stated in *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968): "It is elementary that if there is no ambiguity, the construction of the written instrument is a question of law for the court." In the cause at bar, Westwind did not plead ambiguity or any other theory that could raise a fact issue regarding the parties intent. Thus, the court of appeals correctly held that whether Westwind strictly complied with the letter of credit is a question of law for the court to decide.

Westwind points out that the letter of credit did not explicitly limit the run statements/tickets provision to *only* crude oil delivered in August 1982. Thus, Westwind argues that it strictly complied with the letter of credit by submitting run statements of *some* crude oil delivered in August 1982. According to this argument, Westwind was only required to provide Homestate with run statements/tickets evidencing delivery to ICC of one drop of crude oil in August 1982. With that requirement satisfied, Westwind could collect up to the letter's $124,000 face amount for any balance due Westwind from ICC, whether it be from oil deliveries or any other debt. Westwind submits that any other construction of the letter of credit would render the performance of the letter impossible. Furthermore, Westwind contends that the two amendments to the letter of credit extending its expiration date demonstrate an intent by Homestate to pay on the letter of credit for non-August 1982 deliveries of crude oil. Again, we disagree.

 First, both amendments to the letter of credit extending the letter's expiration date expressly provide that "all other terms and conditions shall remain the

same." Thus, as a result of these amendments, we cannot objectively infer any intent by Homestate to accept and make payment for Westwind's presentment of run statements/tickets evidencing delivery of crude oil in months other than August 1982.

 Second, the construction of the letter of credit advocated by Homestate and approved by the court of appeals, that the letter of credit was intended to insure payment of the crude oil delivered to ICC in August 1982 only, does not render the performance of the letter of credit impossible. Under this construction, performance of the letter of credit would be possible if Westwind limited its presentment documents to those run statements evidencing deliveries of crude oil to ICC in August 1982. The fact that this construction renders performance impossible for the presentment actually made by Westwind, does not mean that performance would always be impossible.

Thus, we are left with determining whether Westwind strictly complied with the terms of the letter of credit by attempting to collect for oil delivered to ICC in months other than August 1982. Since both parties contend, and we agree, that the letter of credit in issue is not ambiguous, we will follow the rule that "[c]ourts will give effect to the [objective] intention of the parties as expressed or as is apparent in the writing." *City of Pinehurst*, 432 S.W.2d at 518. In so doing, we must recognize that "the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement," *id.* and that "[a] reasonable interpretation [of an agreement] will be preferred to one which is unreasonable." *Portland Gasoline Co. v. Superior Marketing Co.*, 150 Tex. 533, 243 S.W.2d 823, 824 (1951).

The construction of the letter urged by Westwind is unreasonable because it would render certain clauses meaningless and it would require Homestate to pay for balances due to Westwind by ICC

that are unrelated to crude oil deliveries. For example, it would not make sense to spell out the requirement that Westwind must present copies of run statements/tickets evidencing delivery of crude oil to ICC during August 1982, if the letter was intended to cover deliveries of oil in other months. Also, the requirement in the third clause that the "[b]eneficiary can draw only on the amount due them, after any or all taxes connected with *this oil* are deducted by [ICC]," clearly refers to the August 1982 deliveries of crude oil in the second clause. Furthermore, Westwind's interpretation of the letter of credit would require Homestate to pay Westwind up to the letter's $124,000 face amount for any balance due Westwind by ICC. This would include balances due Westwind from ICC from debts unrelated to oil deliveries, as long as one drop of oil was delivered to ICC in August 1982. In light of the fundamental rules of construction, this interpretation is unreasonable.

Consequently, we hold that the letter of credit covered the balances due Westwind by ICC resulting from the deliveries of crude oil in August 1982 only. Thus, Homestate properly dishonored Westwind's presentment of the letter of credit because Westwind, by attempting to collect for non-August 1982 deliveries of crude oil, failed to strictly comply with the terms of the letter. Accordingly, we affirm the judgment of the court of appeals.