DELTA BRANDS, INC., Appellant,

v.

MBANK DALLAS, N.A., formerly known as Mercantile National Bank At Dallas, Appellee.

No. 05–85–00807–CV.

Court of Appeals of Texas, Dallas.

Sept. 2, 1986.

Rehearing Denied Oct. 13, 1986.

Herman A. Lusky, Elizabeth A. Slate, Dallas, for appellant.

Timothy A. Duffy, Denise A. Bretting, Dallas, for appellee.

Before VANCE, DEVANY and SCALES, JJ.

SCALES, Justice.

Delta appeals from a summary judgment granting MBank recovery of money it paid Delta under a documentary letter of credit. We affirm.

Eurobox SPA contracted to purchase a steel coil processing line from Delta, which was to be installed in Eurobox's plant. To finance the purchase, Banca Popolare Di Vicenza, an Italian bank, issued a $698,737 documentary letter of credit[1] in favor of Delta. MBank agreed to act as a confirming bank,[2] paying Delta various sums as the installation of the machinery progressed. The present dispute centers on a payment of $57,600 which "matured" on February 5, 1983.

The letter of credit provided:

We open our irrevocable documentary credit no. 1537/82 in favour of Delta Brands, Inc. . . . expiry November 30, 1982 for USDLRS 698,737–payable at the following maturities:

. . . . .

USDLRS 57,600 on 5th Februery (sic) 1983 against beneficiary's draft on yourselves accompanied by: Original approval of start up at applicant's works, signed by Eurobox SPA, Camisano Vicentino.

On March 15, 1983, Delta submitted a draft for $57,600 to MBank, accompanied by the following document:

---

1. A documentary letter of credit, or documentary draft, is one the honor of which is conditioned upon the presentation of a document or documents. TEX.BUS. & COM.CODE ANN. § 5.103(a)(2) (Vernon 1968); *see Travis Bank & Trust v. State,* 660 S.W.2d 851, 853 n. 2 (Tex. App.—Austin 1983, no writ).

2. A confirming bank is a bank which engages either that it will honor a credit already issued by another bank or that such a credit will be honored by the issuer or a third bank. TEX. BUS. & COM.CODE ANN. § 5.103(a)(6) (Vernon 1968).

**DELTA BRANDS INC.**
2204 Century Center Blvd.
Irving, Texas 75062

SERVICE REPRESENTATIVE

_Buddi Thongh_

DATE OF ARRIVAL  | 6 F+ 83 |

## EQUIPMENT INSTALLATION CUSTOMERS APPROVAL

CUSTOMER | _Cab Boy SPA_ | FAB ORD NO. | _EUR-01_

LOCATION | _Italy_ | INSTALLATION ☒ / REPAIR ☐

| COMPONENT | REPAIRS OR MODIFICATIONS | Checked OK |
|---|---|---|
| Tinplate Line | Installation & Start up Of Tinplate pin— Line Running To Speed All Components Operational | |
| | Problem Remaining Cutting flu. We Have Problem Starting on Run out Conv. after #2 Pocket | |
| | Replace Cut Belts on #3 Conv. | |
| | Camisano Vicentino | |

83 MAR 4 910:108

**NAME OF TRAINED OPERATORS:**

I certify that the equipment furnished by Delta Brands Inc. has been installed, started up and it is operating to our entire satisfaction.

DATE | 6 March 83 |     SIGNED BY: _____

TITLE: _____

MBank credited $57,487.40 ($57,600 less MBank's fees) to Delta's account and sought reimbursement from Banca Popolare. Banca Popolare, however, refused to pay MBank on the basis that the approval of start up document was not signed and the credit had expired. MBank then filed suit against Delta, alleging breach of the warranty provisions of section 5.111 of the Texas Business and Commerce Code.[3] The trial court granted summary judgment in favor of MBank.

In its sole ground of error, Delta maintains that the trial court erred in granting summary judgment, because material issues of fact existed regarding whether the approval document complied with the terms of the letter of credit and whether Delta's draft and the approval document were timely submitted. We do not reach the question of whether the draft and approval document were timely submitted because we hold, as a matter of law, that the approval document did not comply with the terms of the letter of credit.

The usual letter of credit involves three functionally related, but legally separate, agreements. The first agreement is between the buyer/account party and the seller/beneficiary involving the underlying transaction. The second agreement is between the account party and the issuer whereby the issuer agrees to lend its credit to assist the account party. The third agreement, or the letter of credit, is between the beneficiary and the issuer.[4] *Westwind Exploration, Inc. v. Homestate Savings Ass'n*, 696 S.W.2d 378, 381 (Tex. 1985).

■ Our research has revealed no cases in which section 5.111 has been applied where an issuer or confirming bank seeks to recover from the beneficiary money wrongfully paid under a letter of credit.

We therefore must first determine whether section 5.111 permits such an action.

Section 5.111(a) provides:

(a) Unless otherwise agreed the beneficiary by transferring or presenting a documentary draft or demand for payment warrants to all interested parties that the necessary conditions of the credit have been complied with. This is in addition to any warranties arising under Chapters 3, 4, 7 and 8.[5]

Because section 5.111(a) expressly provides that the warranties made by the beneficiary of a letter of credit are made to "all interested parties," courts in other jurisdictions, under different factual situations, have stated that the payor under a letter of credit may recover from the beneficiary when payment was unauthorized. *See First Arlington National Bank v. Stathis*, 115 Ill.App.3d 403, 71 Ill.Dec. 145, 151, 450 N.E.2d 833, 839 (1 Dist.1983); *Werner v. Grootemaat & Sons, Inc.*, 80 Wis.2d 513, 259 N.W.2d 310, 315 n. 22 (1977). *See also* Squillante, *Letter of Credit: A Discourse* (pt. 6), 85 Com.L.J. 145 (1980).

Moreover, in *First National City Bank v. Klatzer*, 28 U.C.C. Rep. Serv. 497 (N.Y. Sup.Ct.1979), the court, without citing section 5.111, held that the collecting bank was entitled to reimbursement of the money it paid the beneficiary after careless examination of the documents presented under the letter of credit. The court stated:

[Confirming bank] is now in the position of having paid out on a letter of credit without being able to collect from the issuer. Under these circumstances [it] contends it should be reimbursed by [beneficiary] to whom it mistakenly paid.... [Beneficiary] contends, in effect, that because [confirming bank] was careless in paying him without properly

---

**3.** TEX.BUS. & COM.CODE ANN. § 5.111 (Vernon 1968). All citations are to the Texas Business & Commerce Code unless otherwise noted.

**4.** A confirming bank by confirming a credit becomes directly obligated on the credit to the extent of its confirmation as though it were its

issuer and acquires the rights of an issuer. Section 5.107(b).

**5.** The warranty provisions under chapters 3, 4, 7, and 8 of the Texas Business & Commerce Code are inapplicable to this case.

examining his documents it should bear the loss.... [Beneficiary] has given no valid reason why it should benefit from [confirming bank's] mistake....

*Id.* at 497. In light of the official comment under section 5.111 that "the purpose of this section is to state the peculiar warranty of performance made by a beneficiary and to make clear the intermediary character of the persons moving the documents from the beneficiary to the customer," U.C.C. § 5–111 official comment (1962), we believe that the considerations enunciated in *Klatzer* are consistent with the purpose of section 5.111. Thus, we hold that where an issuing or confirming bank honors a letter of credit but is refused reimbursement, the issuing or confirming bank may, under the warranty provisions of section 5.111, recover from the beneficiary the money paid it.

We next must determine what warranties are made by the beneficiary upon presentment of the letter of credit. Although section 5.111(a) provides that the beneficiary warrants that the necessary conditions of the credit have been complied with, the Uniform Commercial Code does not define the scope of the phrase "the necessary conditions of the credit". The official comment states that "so far as the draft or the relevant documents are concerned, the beneficiary's warranties are usually those of an ordinary transferor or indorser for value although varying circumstances may alter this." U.C.C. § 5–111 official comment (1962). The usual warranties of an ordinary transferor or indorser for value generally include warranties that the document and signatures thereon are genuine, that the presenter has good title to the instrument or is authorized to obtain payment by one who holds good title, and that the presenter has no knowledge of any fact which would impair the validity or worth of the document. *See* TEX. BUS & COM. CODE ANN. §§ 3.417, 4.207, 7.507, 8.306 (Vernon 1968 & Supp. 1986).

In *Stathis,* however, the appellate court of Illinois concluded that section 5–111 encompasses more than a simple warranty that the drafts, supporting documents, and signatures are genuine. The court held that the warranties under section 5–111 are at least as broad as the circumstances encompassed by the provisions governing the issuer's duty to honor a letter of credit set out in section 5–114 of the Uniform Commercial Code. The court reasoned that, since an issuer wrongfully honors a letter of credit only when it pays on presentation of documents which do not conform on their face to the terms of the credit, a beneficiary warrants under section 5–111 that the documents do conform to the terms of the letter of credit. *Stathis,* 71 Ill.Dec. at 151, 450 N.E.2d at 839. *See also Werner,* 259 N.W.2d at 315 n. 22.

■■ This rationale applies equally under Texas law. In Texas, the issuer's liability under a letter of credit is unrelated to the performance of the underlying contract between the customer and the beneficiary, section 5.114(a); *Republic National Bank v. Northwest National Bank,* 578 S.W.2d 109, 114 (Tex.1978), but is, instead, contingent solely upon the beneficiary's proper presentment of the letter. Section 5.114(a); *Westwind,* 696 S.W.2d at 381. Proper presentment of a letter of credit occurs when the beneficiary strictly complies with the terms of the letter. *Westwind,* 696 S.W.2d at 381. We hold that, when a beneficiary presents the supporting documents to the issuing or confirming bank, the beneficiary warrants under section 5–111 that the documents do strictly comply with the terms of the letter of credit.

Strict compliance is a question of law for the court to decide. *Id.* In determining whether a beneficiary has strictly complied with the terms of a letter of credit, it is clear that no deviation from the requirements set out in the letter of credit is permitted. In *Westwind,* the letter of credit required that the beneficiary's draft be accompanied by a "copy of run statements/tickets evidencing delivery of crude oil ... during the month of August, 1982." *Westwind,* 696 S.W.2d at 380. The letter of credit originally was to expire on Sep-

tember 27, 1982; however, it was amended twice to extend the expiration date, first to October 28, 1982, then to November 29, 1982. The beneficiary presented a draft, accompanied by crude oil run statements for July, August, September and October 1982, to the issuer. The supreme court held that the issuer properly dishonored the letter of credit because the beneficiary, by attempting to collect for non-August 1982 deliveries of crude oil, failed to strictly comply with the terms of the letter of credit. *Id.* at 382. *See also Cortaulds North America, Inc. v. North Carolina National Bank,* 528 F.2d 802 (4th Cir.1975) (issuer properly dishonored draft presented under a documentary letter of credit requiring that the draft be accompanied by an invoice stating that it covered "100% acrylic yarn" where the invoice attached to the draft described the goods as "imported acrylic yarn"); *Eximetals v. Guimaraes, S.A.,* 73 A.D.2d 526, 422 N.Y.S.2d 684 (1979) (issuer correctly refused to honor a letter of credit accompanied by an inspection certificate that the materials shipped were "as per shippers proforma invoice of November 9th, 1977," where the letter of credit required that the beneficiary "must now certify that the material shipped is 7124 units Ribbet Flange in accordance with sample and buyers drawing No. 17865"). Thus, in strictly complying with the terms of a documentary letter of credit, "[t]here is no room for documents which are almost the same, or which will do just as well." *Courtaulds,* 528 F.2d at 806, *quoting Equitable Trust Co. v. Dawson Partners, Ltd.,* 27 Lloyd's List L.R. 49, 52 (1926).

■ Delta, however, argues that since the approval document in the present case was ambiguous, the rules of ordinary contract construction apply and the meaning of the language used is a fact issue to be determined by the trial court. We disagree. We first note that Delta did not plead ambiguity in the trial court, thus the strict compliance test applies. *Westwind,* 696 S.W.2d at 381. Moreover, it is not ambiguity in the *documents accompanying* a letter of credit which creates a fact

issue; instead it is ambiguity *in the letter of credit* which creates a fact issue. *See Temple-Eastex, Inc. v. Addison Bank,* 672 S.W.2d 793, 798 (Tex.1984) (*"letters of credit* are governed by the construction rules of ordinary contracts") (emphasis added); *Insurance Co. of North America v. Cypress Bank,* 663 S.W.2d 122, 124 (Tex. App.—Houston [1st Dist.] 1983, no writ) ("the sole issue is the interpretation *of the letter of credit,* which is governed by the rules of ordinary contracts ... if *that* language is ambiguous, its meaning is determined by the fact finder") (emphasis added). *But see Siderius, Inc. v. Wallace Co.,* 583 S.W.2d 852, 863 (Tex.App.—Tyler 1979, no writ) ("we do not believe the bill of lading was ambiguous; therefore construction of the bill of lading was a question of law for the trial court").

■ In the present case, the document submitted by Delta as the approval of start up does not comply with the terms of the letter of credit. The letter of credit required "an original approval of start up." The document submitted, however, reflects only that the "tinplate line" is installed, started, and "all components operational," followed by an enumeration of problems experienced by the customer. Although the document is entitled "Equipment Installation Customers Approval," no approval of the equipment appears in the document. The signature line, immediately following the printed statement "I certify that the equipment furnished by Delta Brands, Inc. has been installed, started up and it is operating to our entire satisfaction", is blank. The only signature on the document appears, not on the signature line provided to evidence satisfaction with the installation of the equipment, but, following the enumeration of the difficulties experienced with the machinery. Thus, we hold that where no specific approval of the installation and operation of the equipment appears in the document and where no signature appears in the space provided on the document to indicate approval of the equipment, as a matter of law, the doc-

ument did not strictly comply with the terms of the letter of credit.

The judgment of the trial court is affirmed.