**BORG–WARNER ACCEPTANCE CORPORATION, a Delaware Corporation, Appellant,**

v.

**TASCOSA NATIONAL BANK, Appellee.**

**No. 07–88–0168–CV.**

Court of Appeals of Texas, Amarillo.

Jan. 31, 1990.

Rehearing Denied March 1, 1990.

**131**

Andrew Barr, Robert P. Taylor, Locke Purnell Rain Harrell, Dallas, for appellant.

John C. Chambers, David T. Markette, Karen M. Richardson, Hinkle Cox Eaton Coffield & Hensley, Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and POFF, JJ.

DODSON, Justice.

Borg–Warner Acceptance Corporation (Borg–Warner) appeals from a summary judgment rendered in favor of the Tascosa National Bank of Amarillo (Bank) on Borg–Warner's action against the Bank for conversion of certain items of inventory of T & L Ventures, Inc., d/b/a The Video Connection (T & L) on which Borg–Warner claimed a superior purchase money security interest (PMSI) lien. By four cross-points the Bank claims the trial court erroneously rendered judgment for Borg–Warner on two letters of credit issued by the Bank. Affirmed in part and reversed and rendered and remanded in part.

Borg–Warner brings two points of error. By its first point of error Borg–Warner claims the trial court erred by rendering summary judgment in favor of the Bank and by determining as a matter of law that Borg–Warner's security interest in T & L's inventory was subordinate to the Bank's security interest. By its second point of error Borg–Warner claims the trial court erred by not rendering summary judgment in its favor and by not determining as a matter of law that Borg–Warner's security interest in T & L's inventory was entitled to priority over the Bank's security interest.

The undisputed facts giving rise to this controversy are as follows. On 1 March 1982, the Bank extended a loan to T & L in the sum of $30,006.00. A financing statement was obtained and filed with the Secretary of State on 4 March 1982. The Bank's financing statement described the collateral as:

> Video software and hardware, computer games hardware and software, all inventory, furniture, fixtures of above located at Amarillo, Potter County, Texas.

From time to time, the indebtedness was renewed and extended and additional funds were provided T & L with the last note dated 18 April 1986, in the principal amount of $153,613.84. All indebtedness was evidenced by notes and secured by the same collateral.

On 7 March 1982, Borg–Warner and T & L executed and entered into an Inventory Security Agreement and Power of Attorney (the Inventory Security Agreement). Under the Inventory Security Agreement, T & L granted to Borg–Warner a security interest in its inventory purchased with the proceeds of loans made by Borg–Warner.

Borg–Warner perfected its security interest as a PMSI under section 9.312(c) of the Texas Business and Commerce Code Annotated (Vernon Supp.1990)[1] by: (1) filing on 11 March 1982, a financing statement describing the collateral, with the Office of the Secretary of State of Texas; and (2) notifying the Bank of Borg–Warner's security interest in T & L's inventory.

---

1. All references to § 9.312(c) hereinafter are to Tex.Bus. & Com.Code Ann. (Vernon Supp.1990).

Following the perfection of Borg–Warner's PMSI, Borg–Warner commenced financing the acquisition of inventory by T & L and continued such financing through 22 May 1986. Pursuant to a "floor-planning" arrangement, Borg–Warner purchased from the vendors and paid directly to the vendors the invoice purchase price of inventory acquired by T & L for resale. Further, indebtedness was not incurred for any purpose other than the purchase of inventory.

On 8 June 1983, the Bank issued Irrevocable Letter of Credit No. 458 (LOC 458) in favor of Borg–Warner for the account of T & L up to an aggregate amount of $15,000.00. By a letter dated 29 May 1984, from the Bank to Borg–Warner, the original maturity date of LOC 458 was changed from 8 June 1984, to 8 June 1985; and by a letter dated 28 June 1985, from the Bank to Borg–Warner, the maturity date of LOC 458 was extended to 8 June 1986.

On 19 March 1985, the Bank issued Irrevocable Letter of Credit No. 633 (LOC 633) in favor of Borg–Warner for the account of T & L, up to an aggregate amount of $15,000.00. By a letter dated 18 March 1986, from the Bank to Borg–Warner, the maturity date of LOC 633 was extended to 18 May 1986; and by a letter dated 14 May 1986, from the Bank to Borg–Warner, the maturity date of LOC 633 was extended to 18 July 1986.

Subsequently, T & L defaulted on its indebtedness. On 11 May 1986, the Bank repossessed the inventory that gives rise to this controversy and removed the inventory from T & L's premises and placed it in a warehouse. Borg–Warner made demand on the Bank to deliver the inventory and the Bank refused.

On 3 June 1986, Borg–Warner submitted two drafts under LOC 458 and LOC 633, each in the sum of $15,000.00 directing that the Bank pay such sums to the order of Borg–Warner in care of Texas Commerce Bank, Suite 418, Amarillo, Texas. By a letter dated 6 June 1986, addressed to Borg–Warner and sent certified mail, return receipt requested, and hand delivered to Borg–Warner on the same date, the Bank rejected the presentments under LOC 458 and LOC 633.

On 18 June 1986, Borg–Warner instituted suit against T & L, four individuals who were guarantors of T & L's indebtedness, and the Bank. Borg–Warner later dismissed its claims against two of the individual guarantors who were adjudicated bankrupt. The claims against T & L and the other two individual guarantors were severed and continued in a separate action.

Borg–Warner's suit against the Bank asserted two causes of action: (1) wrongful conversion of the inventory in which Borg–Warner held a PMSI; and (2) wrongful dishonor by the Bank of two letters of credit issued in favor of Borg–Warner. While the suit was pending, pursuant to an agreement between Borg–Warner and the Bank, T & L's inventory was sold. The net proceeds from the sale totaled approximately $140,771.39.

On 11 December 1986, Borg–Warner filed a motion for partial summary judgment in regard to the Bank's wrongful dishonor of the drafts presented under LOC 458 and LOC 633. On 26 January 1987, the trial court granted a partial summary judgment for Borg–Warner against the Bank.

The Bank later filed a motion for partial summary judgment on Borg–Warner's first cause of action in regard to the priority of liens and requested a reconsideration of the partial summary judgment in favor of Borg–Warner. Borg–Warner responded and filed its motion for partial summary judgment by contending that under section 9.312(c) its PMSI in the inventory had priority over any conflicting security interest.

The trial court rendered two partial summary judgments and merged them into a final judgment. By that judgment the trial court rendered summary judgment in favor of Borg–Warner on the two letters of credit and rendered summary judgment in favor of the Bank on Borg–Warner's cause of action regarding the PMSI. Borg–Warner appeals from that portion of the judgment disposing its cause of action for conversion of the inventory.

The determinative issue on Borg–Warner's appeal is the priority of liens question. If Borg–Warner's security interest qualifies as a PMSI under section 9.312(c), Borg–Warner prevails. However, if Borg–Warner's security interest does not so qualify, then the Bank prevails under the "first-to file rule." Tex.Bus. & Com.Code Ann. § 9.312(e)(1) (Vernon Supp.1990).

The Texas Business and Commerce Code defines two types of PMSI's, that claimed by sellers and that claimed by financing agencies:

A security interest is a "purchase money security interest" to the extent that it is
(1) taken or retained by the seller of the collateral to secure all or part of its price; or
(2) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

Tex.Bus. & Com.Code Ann. § 9.107 (Vernon Supp.1990).

■ We reiterate, the general rule of priority among conflicting security interests in the same collateral where both interests are perfected by filing, is that the secured party who first files a financing statement prevails. Tex.Bus. & Com.Code Ann. § 9.312(e)(1) (Vernon Supp.1990). However, section 9.312(c) states a special rule for a PMSI in inventory. That subsection reads in full as follows:

(c) *A perfected purchase money security interest in inventory has priority over a conflicting security interest in the same inventory* and also has priority in identifiable cash proceeds received on or before the delivery of the inventory to a buyer if
(1) the purchase money security interest is perfected at the time the *debtor* receives possession of the inventory; and
(2) except where excused by Section 9.319 (oil and gas production), *the purchase money secured party gives notification in writing to the holder of the conflicting security interest if the holder had filed a financing state-*

*ment covering the same types of inventory* (i) before the date of the filing made by the purchase money secured party, or (ii) before the beginning of the 21 day period where the purchase money security interest is temporarily perfected without filing or possession (Subsection (e) of Section 9.304); and
(3) *the holder of the conflicting security interest receives any required notification within five years before* the debtor receives possession of the inventory; and
(4) *the notification states that the person giving the notice has or expects to acquire a purchase money security interest in inventory of the debtor, describing such inventory by item or type.* (emphasis added)

Tex.Bus. & Com.Code Ann. § 9.312(c) (Vernon Supp.1990).

■ Under the above provisions, Borg–Warner's security interest is a PMSI to the extent that it is taken by Borg–Warner who by incurring an obligation gave value to enable T & L to acquire rights in or the use of collateral if such value was in fact used. Tex.Bus. & Com.Code Ann. § 9.107(2) (Vernon Supp.1990).

■ In determining the priority between Borg–Warner and the Bank, we note that the legislature has provided that a PMSI in inventory such as Borg–Warner's has priority over a conflicting security interest in the same inventory and also has priority in identifiable cash proceeds received on or before the delivery of the inventory to the debtor (*i.e.*, T & L) if: (1) the PMSI was perfected at the time T & L received possession of the inventory; (2) Borg–Warner gave notice in writing to the Bank who had filed a financing statement covering the same type inventory before the date of filing by Borg–Warner; (3) the Bank received any required notification within five years before T & L received possession of the inventory; and (4) the notification stated that Borg–Warner expected to acquire a PMSI in the inventory of T & L, describing such inventory by item or type. *Ford Motor Credit Company v. First State Bank of Smithville*, 679 S.W.2d 486, 487 (Tex.

1984); *Borg–Warner Acc. Corp. v. Wolfe City Nat. Bank*, 544 S.W.2d 947, 950 (Tex. Civ.App.—Dallas 1976, no writ); Tex.Bus. & Com.Code Ann. § 9.312(c) (Vernon Supp. 1990).

Parenthetically, we note that the legislature's use of "inventory" is generic in the sense that it does not require an item by item analysis. Additionally, we point out that to protect the holders of any prior filed security interest in the inventory, the legislature provided the notification requirements. *See* White & Summers, Uniform Commercial Code § 25–5 (2d ed. 1980). Our earlier explication of the undisputed facts reveal that Borg–Warner complied with the statutory code requirements.

The Bank, in its motion for partial summary judgment and on appeal claims that even if Borg–Warner did have a PMSI priority, Borg–Warner lost such priority because its security agreement provided that Borg–Warner had a "future advances" clause and an "after acquired property" clause which contradicted any claim of priority as a PMSI. The Bank argues that the transformation rule applies here because the inventory security agreement by its terms destroyed any priority Borg–Warner might have had as a PMSI holder.

In advancing its position on appeal the Bank relies heavily upon the United States Court of Appeals in *Southtrust Bank v. Borg–Warner Acceptance Corp.*, 760 F.2d 1240 (11th Cir.1985). In *Southtrust Bank* both parties had perfected security interests in the inventory of the debtors.[2] In each case, the bank filed its financing statement first. Borg–Warner claimed that a purchase money security interest exception applied and therefore it was entitled to possession of the inventory under both the Georgia and Alabama versions of the Uniform Commercial Code.

The key issue decided by the Eleventh Circuit was whether the inclusion of an

after acquired property clause and a future advances clause in Borg–Warner's security agreement transformed its PMSI into an ordinary security interest. Following the transformation rule, the court found the following determinative of its holdings. First, there were no policy reasons to limit the holding of consumer bankruptcy cases because "[n]othing in the language of U.C.C. § 9.312(3) or § 9.107 distinguishes between consumer and commercial transactions or between bankruptcy and non-bankruptcy contexts." *Id.* at 1242. Next the court determined *that there had been an actual exercise of the future advance clause and after acquired property clause* in the security agreement which transformed the PMSI into an ordinary security interest. *Id.* at 1243. Finally, the court concluded that in order for a floating lien to maintain PMSI status, the lender must contractually provide some method for determining the extent to which each item of collateral secures its purchase money. *Id.* We are not persuaded that *Southtrust Bank* is applicable in this instance. In that regard, we point out that the Texas Legislature has clearly spoken and provided a priority PMSI.

Courts applying the transformation rule have done so in cases involving the financing of consumer goods where: (1) the indebtedness has been refinanced or consolidated; (2) the security agreement contains after acquired property clauses and cross collateralization clauses; and (3) the collateral will secure later indebtedness.[3] The rationale is that the refinancing transforms a PMSI into a nonpurchase money security interest because refinancing does not enable the debtor to acquire rights in the collateral. In other words, the item secures more than its own price and there is no longer a pure PMSI; consequently, that lien disappears.

The underlying policy of the transformation rule applied in consumer goods cases is

---

**2.** This appeal involved Southtrust Bank, Borg–Warner, and four debtors, one in Georgia, three in Alabama.

**3.** *See In re Manuel*, 507 F.2d 990 (5th Cir.1975) (holding, in a consumer bankruptcy context, a

PMSI must be limited to the item purchased at the time of the agreement and cannot exceed the price of that item); *In re Norrell*, 426 F.Supp. 435 (M.D.Ga.1977) (same).

to prevent overreaching creditors from retaining title to all items covered under a consolidation contract until the last item purchased is paid for. Otherwise, the creditor continues to reserve a PMSI in each item until the entire indebtedness is satisfied.

Courts that have refused to apply the transformation rule have done so in cases where the debtor in bankruptcy has sought to avoid a PMSI held by a creditor in personal property.[4] Those courts reason that a security interest has a dual status and thus a refinancing or an advance of additional funds does not destroy the PMSI aspect of the security interest. The dual status rule is sensitive to the policy concerns in section 9.107(1) of the Uniform Commercial Code as adopted by various jurisdictions and supportive of a public policy encouraging refinancing under circumstances where the creditor has the burden of demonstrating the extent to which a security interest retains purchase money status. These policy considerations are a benefit to both buyer and seller to facilitate the sale of consumer goods.

We have not been directed to, nor has our research revealed circumstances in which the transformation rule has been applied by Texas Courts to cases involving priorities among lienholders. We see no reason to do so now.

■ The Texas Business and Commerce Code Annotated section 1.102 (Vernon 1968) declares that the code must be liberally construed and applied to promote its underlying purposes and policies. The underlying purposes and policies of the code are to simplify, clarify, and modernize the law governing commercial transactions, to permit the continued expansion of commercial practices through custom, usage and agreement of the parties, and to make uniform the law among the various jurisdictions. We see no need to juxtapose the transformation rule on the clear meaning of the Texas Legislature's mandate.

■ The legislature gave favored treatment to PMSI status. A PMSI simplifies repeat transactions between the same buyer and financier. The legislature has made clear that when the inventory financier has complied with the requirements of the Texas Business and Commerce Code, the financier has a PMSI in existing and after acquired inventory, in effect a floating lien over the mass of changing goods available for sale by the debtors to others, with priority over other conflicting security interest.

Borg–Warner's first and second points of error are sustained.

By four cross-points the Bank claims that:

(1) The district court erred in entering partial summary judgment in favor of Borg–Warner holding, as a matter of law, that the Bank wrongfully dishonored Letter of Credit 633;

(2) The district court erred in not entering partial summary judgment in favor of the Bank refusing to hold, as a matter of law, that Borg–Warner recover nothing under its presentment under Letter of Credit 633;

(3) The district court erred in entering partial summary judgment in favor of Borg–Warner holding, as a matter of law, that the Bank wrongfully dishonored Letter of Credit 458; and

(4) The district court erred in not entering partial summary judgment in favor of the Bank refusing to hold, as a matter of law, that Borg–Warner re-

---

4. The cases cited to us are: *Pristas v. Landaus of Plymouth, Inc.,* 742 F.2d 797 (3rd Cir.1984) (PMSI in consumer goods was retained when a PMSI was consolidated with subsequent purchases); *In re Hemingson,* 84 B.R. 604 (Bankr.D. Minn.1988) (adopted dual status rule in consumer consolidation of loans for farm equipment); *Geist v. Converse County Bank,* 79 B.R. 939 (Bankr.D.Wyo.1987) (applied dual status rule to refinancing of real and personal property); *In re Billings,* 63 B.R. 717 (Bankr.D.Colo. 1986) (refinancing consumer debt does not transform PMSI character of original loan); *In re Linklater,* 48 B.R. 916 (Bankr.D.Nev.1985) (dual status rule used to determine whether perfected PMSI in consumer goods is lost); *In re Sprague,* 29 B.R. 711 (Bankr.M.D.Penn.1983) (consolidation of consumer debt does not transform character of PMSI); *In re Gibson,* 16 B.R. 257 (Bankr.D.Kansas 1981) (refinancing of household goods does not transform character of PMSI).

cover nothing under its presentment under Letter of Credit 458.

■■■■ The Bank's liability as issuer on the irrevocable letters of credit is contingent on Borg–Warner's proper presentment of the letters. *Westwind Exploration v. Homestate Sav. Ass'n,* 696 S.W.2d 378, 381 (Tex.1985); Tex.Bus. & Com.Code Ann. § 5.114(a) (Vernon 1968). Proper presentment of a letter of credit occurs when the beneficiary strictly complies with the terms of the letter of credit. *Westwind Exploration v. Homestate Sav. Ass'n,* 696 S.W.2d at 381; *Temple–Eastex, Inc. v. Addison Bank,* 672 S.W.2d 793, 795 (Tex. 1984). If there is strict compliance with the terms of the letter of credit by the beneficiary, then the issuer has no option other than to pay the beneficiary according to the terms of the letter of credit. *Westwind Exploration v. Homestate Sav. Ass'n,* 696 S.W.2d at 381. The determination of whether Borg–Warner strictly complied with the letter of credit is a question of law for the court to decide. *Id.*

■■■■ In support of its cross-points, the Bank argues that Borg–Warner's presentments failed to strictly comply with the requirements of the letters of credit because the invoices submitted as part of the presentment were not invoices issued by Borg–Warner to T & L. We find no such requirement in either letter of credit.

In pertinent part LOC 458 reads:

We hereby open our Irrevocable Letter of Credit in your favor for the account of T & L Ventures, Inc., 1619 S. Kentucky Building A, # 180, Amarillo, TX 79102 up to an aggregate amount in U.S. Dollars of Fifteen Thousand and no/100————($15,000.00) available upon presentation to us of your draft(s) at Tascosa National Bank, P.O. Box 3640 Amarillo, TX 79116–3640 sight on us, accompanied by documents specified below:

> *Your sworn statement that* the drawing of this Letter of Credit is for payment for Video Hardware delivered to T & L Ventures, Inc. and that the *invoice [sic] due your company* are

past due under the terms.... (emphasis added)

In that regard, we hasten to point out that "copies of invoices" are not required by the letter of credit. LOC 458 does require a sworn statement that (1) the drawing of LOC 458 is for payment of video hardware delivered to T & L and (2) that the invoices due your company are past due under the terms.

Conforming to the requirements for LOC 458, Borg–Warner's presentment states in part:

2. This sworn statement is made pursuant to the terms of [LOC] 458 issued in favor of Borg–Warner for the account of [T & L], 1619 S. Kentucky, Building A, # 180, Amarillo, TX 79102, up to an aggregate amount of $15,000.00

3. The drawing of this Letter of Credit is for payment for the Video Hardware delivered to [T & L] and the invoices due [Borg–Warner] are past due under the terms.

Even though LOC 458 required no "copies of invoices," the presentment further stated:

4. Attached to this Sworn Statement are true and correct *copies of invoices* for Video Hardware delivered to [T & L] *which are due Borg–Warner* and are past due under the terms. (emphasis added)

In pertinent part LOC 633 reads:

We hereby open our Irrevocable Letter of Credit in your favor for the account of T & L Ventures, Inc., 1619 S. Kentucky Bldg. A. # 180, Amarillo, TX up to an aggregate amount in U.S. Dollars of ($15,000.00) Fifteen Thousand and no/1-00———————— available upon presentation to us of your sight draft(s) on us at 5601 I–40 West, P.O. Box 3640 Amarillo, Texas 79116–3640 accompanied by documents specified below:

> Your sworn statement that the drawing of this letter of Credit is for Video Hardware delivered to T & L Ventures, Inc. and that the *invoices due your company* are past due under the terms.

Copies of invoices.... (emphasis added)

LOC 633 requires a sworn statement that (1) the drawing of LOC 633 is for Video hardware delivered to T & L, and (2) that the invoices due your company are past due under the terms, and (3) "copies of invoices."

Conforming to the requirements for LOC 633, Borg–Warner's presentment states in pertinent part:

2. This sworn statement is made pursuant to the terms of [LOC] 633 issued in favor of [Borg–Warner] for the account of [T & L], 1619 Kentucky, Building A, # 180, Amarillo, TX up to an aggregate amount of $15,000.00

3. The drawing of this Letter of Credit is for Video Hardware delivered to [T & L] and the invoices due [Borg–Warner] are past due under the terms.

4. Attached to this Sworn Statement are true and correct *copies of invoices* for Video Hardware delivered to [T & L] which are due [Borg–Warner] and are past due under the terms. (emphasis added)

 The rule in Texas is that letters of credit are governed by the construction rules of ordinary contracts. A writing is generally construed most strictly against its author in a manner such that a reasonable outcome consistent with the apparent intent of the parties will result. *Temple–Eastex v. Addison Bank,* 672 S.W.2d at 793. A construction rendering the contract possible of performance is preferred. *Id.*

It is undisputed that the letters of credit in question were drawn by the Bank. Furthermore, the record before this Court is clear and it is not disputed that the Bank was on notice that Borg–Warner was engaged in the business of loaning money to retailers for the purchase of inventory or "floor-planning" inventory for T & L. The money loaned by Borg–Warner to T & L was paid by Borg–Warner to vendors who delivered goods to T & L. The money was paid by Borg–Warner on behalf of T & L in satisfaction of charges set forth in invoices issued to T & L by various vendors.

 LOC 458 and LOC 633 served as security for payment of the amount owed by T & L to Borg–Warner. When the amount owed by T & L became past due under the terms of the contract between Borg–Warner and T & L, Borg–Warner could draw on LOC 458 and LOC 633 for payment of the money owed in connection with the invoices paid by Borg–Warner on behalf of T & L. LOC 458 requires *no* "copies of invoices." Conspicuously absent from the statement in LOC 458 and LOC 633 is any requirement that the invoices be issued by Borg–Warner to T & L. In that connection, we must point out that we are not at liberty to add to or enlarge the language employed in the contract (*i.e.,* letters of credit). Consequently, we agree with the trial court that Borg–Warner complied with the presentment terms of the letters of credit in question. The Bank's four cross-points are overruled.

In sum, Borg–Warner's first and second points of error are sustained. The Bank's four cross-points are overruled.

Accordingly, that portion of the judgment in favor of Borg–Warner on the letters of credit is affirmed. The remaining portion of the judgment in favor of the Bank on Borg–Warner's action regarding the inventory in question is reversed and judgment is here rendered that Borg–Warner has a valid PMSI in the inventory in question which is superior to the Bank's security interest. Borg–Warner's action regarding the inventory is severed and is remanded to the trial court for determination of the amount due Borg–Warner from the proceeds of the sale of T & L's inventory.