**MOBIL OIL CORPORATION**

v.

**ATLANTA NATIONAL BANK.**

**No. M–89–0094–CA.**

United States District Court,
E.D. Texas,
Marshall Division.

Feb. 6, 1990.

Randal Mathis, Strasburger & Price, Dallas, Tex., for plaintiff.

Charles E. Thompson, Atlanta, Tex., for defendant.

## OPINION AND ORDER

HALL, District Judge.

Mobil Oil Corporation brings this action against the Atlanta National Bank of Atlanta, Texas, for the Bank's alleged wrongful dishonor of an irrevocable letter of credit. Before the Court are Plaintiff's Motion for Summary Judgment, filed November 15, 1989; Defendant's Response and Motion for Summary Judgment, filed December 5, 1989; Plaintiff's Response, filed December 28, 1989; and Defendant's Reply to Plaintiff's Response, filed January 8, 1990. After having reviewed the entire record in this case, the Court is of the opinion that no questions of fact exist and that Defendant is entitled to judgment as a matter of law.

Harold Joe Murdock, a life-long resident of Atlanta, Texas, was for many years prior to, and up until the time of his death, the owner and operator of a wholesale gas and petroleum distributorship. He operated this business as a sole proprietorship and in that capacity he was a franchisee of Plaintiff, Mobil Oil Corporation (Mobil).

On May 12, 1988, the Atlanta National Bank (Bank) issued an irrevocable letter of credit in the amount of $150,000.00, naming Mobil Oil Corporation as beneficiary. The letter specifically stated that the Bank was opening this credit "[a]t the request of our customer, Harold J. Murdock, d/b/a Murdock Distributing Company, Atlanta, Texas." The letter also provided that the funds under this credit would be available upon the presentment of a sight draft, accompanied by "[a] signed statement of Mobil Oil Corporation, that the amount claimed hereunder represents balances properly and legally due Mobil Oil Corporation by Murdock Distributing Company."

On December 27, 1988, Mr. Murdock died, leaving his entire estate to his wife, Jane B. Murdock. Mrs. Murdock continued to operate the business, first in her capacity as the independent executrix of Harold Joe Murdock's estate, and then in her individual capacity. She operated this business under the name "Murdock Distributing Company", as her husband had done during his lifetime.

The wholesale distributor agreement between Mobil and Mr. Murdock provided that the contract would terminate upon the death of the buyer (Mr. Murdock). Section 24(B)(4)(e) of Wholesale Distributor Agreement–Motor Fuels. However, Mobil sent a letter to Mrs. Murdock, dated February 23, 1989, which stated in part:

Our sympathy goes out to you and your family regarding the death of your husband. His death is indeed unfortunate. In an effort to help ease your difficulties, our management has agreed to allow you to take over your husband's distributor contract with Mobil. *As you know, our contract provides for the agreement to be terminated upon the death of a distributor.* We are not going to terminate the contract. We are confident you will successfully continue the management of Murdock Distributing. Papers assigning the contract will be mailed to you for

review within the next day or two. (emphasis added.)

A short time later, a franchise agreement was executed whereby Mrs. Murdock was made a franchised operator of Mobil Oil Corporation.

By a letter dated April 14, 1989, Mobil certified to the Bank that the amount of $150,000.00 was "properly and legally due Mobil Oil Corporation by Murdock Distributing Company." The letter also made reference to the account of "Harold J. Murdock, Murdock Distributing Company, Atlanta, Texas." Mobil also presented a draft in the amount of $150,000.00 to the Bank on that same day. The amount owed to Mobil at this time was, in fact, not $150,000.00, but rather $94,865.61.

The Bank informed Mobil, by a letter dated April 19, 1989, that the $150,000.00 draft would not be honored. The Bank gave as its reasons the following:

1) The Letter of Credit was issued at the request of Harold J. Murdock and to secure balances properly and legally owed by Harold J. Murdock. Mr. Murdock is deceased and all balances owed to you at the time of his death have been paid.

2) The draft submitted was in excess of the amount owed by the Murdock Distributing Company and payment is refused in accordance with the provisions of Texas Business and Commerce Code, Section 5.114(b).

Mobil presented the Bank with another draft on May 3, 1989. A letter, certifying that $87,547.11 was "properly and legally due Mobil Oil Corporation by Murdock Distributing Company", accompanied this draft. This letter also stated that these monies should be drawn against the account of "Harold J. Murdock, d/b/a Murdock Distributing Company, Atlanta, Texas."

The $87,547.11 draft was also not honored. In a letter dated May 5, 1989, the Bank gave as its reason for not honoring this draft, the following:

The letter of credit was issued at the request of Harold J. Murdock and to secure balances properly and legally owed by Harold J. Murdock. Mr. Murdock is deceased and all balances owed to you at the time of his death have been paid. The above draft represents balances owed by Jane Murdock after the death of Harold J. Murdock and are therefore not protected by the letter of credit no. 794.

Mobil then filed this suit to recover on the alleged wrongful dishonor of the letter of credit.

At the time of his death, Harold Joe Murdock owed Mobil $107,055.09. It is undisputed that this amount had been paid off prior to May 3, 1989, and that the debts owed to Mobil by Murdock Distributing Company at the time the two demands were made, were in fact incurred during the tenure of Jane Murdock. It is also undisputed that Murdock Distributing Company was never incorporated, and therefore, was at all times a sole proprietorship.

Generally, a letter of credit involves three separate contracts. The first is an underlying contract (usually between a buyer and a seller) for which the letter of credit secures payment. The second is a contract between the issuer (usually a bank) and the buyer (called the customer). The issuing bank promises to issue the letter of credit, and in return for which, the customer promises to reimburse the bank and pay a processing fee. The third contract is between the issuer and the beneficiary (typically the seller). This third contract is the actual letter of credit. It is an instrument in which the issuer promises to pay to the beneficiary, a certain sum of money upon the beneficiary's proper presentment of the letter. See *East Girard Savings Association v. Citizens National Bank and Trust Company of Baytown*, 593 F.2d 598, 601 (5th Cir.1979); *Westwind Exploration v. Homestate Savings Association*, 696 S.W.2d 378, 380 (Tex.1985); *Republic National Bank v. Northwest National Bank*, 578 S.W.2d 109, 112 (Tex.1978).

█ The case at bar turns upon the issue of whether Mobil made proper

presentment to the bank. If proper presentment occurred, the Bank is absolutely obligated to honor the letter of credit. *Westwind Exploration,* 696 S.W.2d at 381. "Proper presentment" occurs when the beneficiary, in this case Mobil, strictly complies with the terms of the letter of credit. TEX.BUS. & COM.CODE ANN. § 5.114(a) (Vernon 1968); *Westwind Exploration,* 696 S.W.2d at 381; *Temple–Eastex, Inc. v. Addison Bank,* 672 S.W.2d 793, 795 (Tex.1984). The determination of whether the beneficiary strictly complied with the terms of the letter of credit is a question of law for the Court to decide. *Westwind Exploration,* 696 S.W.2d at 381; *Employers Mutual Casualty Co. v. Tascosa National Bank,* 767 S.W.2d 279, 282 (Tex. App.—Amarillo 1989, writ denied).

Mobil contends that this letter was issued to secure the debts of "Murdock Distributing Company" and therefore Mobil is entitled to draw upon the letter to cover any debts incurred by anybody operating under the name Murdock Distributing. Therefore, Mobil contends that it made proper presentment, because its demand facially complied with the requirements of the letter, and the debt was one owed by someone or some entity called Murdock Distributing. The Bank contends, however, that the letter was expressly issued to cover the debts of Harold Joe Murdock in his capacity as a sole proprietor. Thus, when Mr. Murdock died, the letter of credit ceased to be viable for any indebtedness owed to Mobil, other than that owed by *Harold J. Murdock,* d/b/a Murdock Distributing Company. Therefore, presentment by Mobil was not proper because it was made to cover debts incurred by someone other than the individual expressly referenced in the letter. The Court agrees with the Defendant, Bank.

A letter of credit is defined in the Texas Business & Commerce Code as follows:

> 'Credit' or 'letter of credit' means an engagement by a bank or other person made *at the request of a customer* and of a kind within the scope of this chapter (Section 5.102) that the issuer will honor drafts or other demands for payment

upon compliance with the conditions specified in the credit.

TEX.BUS. & COM.CODE ANN. § 5.103(a)(1) (Vernon 1968) (emphasis added). The code goes on to define *customer* as "a buyer or other person who causes an issuer to issue a credit." TEX.BUS. & COM.CODE ANN. § 5.103(a)(7) (Vernon 1968).

In this case, the letter of credit specifically states that the Bank's customer is "Harold J. Murdock, d/b/a Murdock Distributing Company." Mr. Murdock operated his business as a sole proprietorship. Therefore, the business had no existence beyond the person of Harold Joe Murdock. Murdock Distributing Company was Harold Joe Murdock. It was an individual business and not a business entity. The use of the words "d/b/a Murdock Distributing Company" only serves to clarify that Mr. Murdock conducted his operations under the name Murdock Distributing Company. Those words did not by themselves create an entity.

Mobil tries to bolster its position that Murdock Distributing Company was a business entity by pointing to a portion of the Probate Code which provides that:

> if the estate owns a ... business, the disposition of which has not been specifically directed by the will ... the representative, upon order of the court, shall carry on the operation of such ... business ... as shall appear to be in the best interest of the estate.

TEX.PROB.CODE ANN. § 238 (Vernon 1980).

While this provision does provide for the continued operation of a business during probate, it does not create a business entity. Rather, when Mr. Murdock died, the sole proprietorship which he operated ceased to exist, and in its place arose a new sole proprietorship which was operated by his independent executrix, Jane Murdock. This new proprietorship, however, continued to employ the name Murdock Distributing Company.

██ The letter of credit contained a provision that for Mobil to draw upon the credit, it must certify "that the amount

claimed ... represents balances properly and legally due Mobil Oil Corporation by Murdock Distributing Company." It is clear, therefore, that the parties intended that the letter only cover the indebtedness of Murdock Distributing Company. However, as previously stated, Murdock Distributing Company was never an entity, but rather it was a person. At the time this letter was written, it was Mr. Murdock. This is made clear by the letter's first sentence which refers to "our customer Harold J. Murdock, d/b/a Murdock Distributing Company." Thus, when Jane Murdock incurred debts with Mobil under the name Murdock Distributing Company, it was a new and different Murdock Distributing Company, one not covered by this letter of credit.

This Court must follow the rule that "[c]ourts will give effect to the [objective] intention of the parties as expressed or as is apparent in the writing." *Westwind Exploration,* 696 S.W.2d at 382 (quoting *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, at 518 (Tex.1968)). Mobil's presentment was not proper, because it was made to cover debts incurred by a party not contemplated by the contracting parties. The parties obviously never intended that this letter of credit cover the debts of Mrs. Murdock, who was a stranger to this transaction, and against whom the Bank would, therefore, not have a right of reimbursement.

■ Mobil complains that it was never notified that this letter had terminated. The Court finds that such notification was not necessary. If this letter terminated prior to the express termination date contained in the letter, it was by operation of law, and it occurred at the point when the debts owed by Mr. Murdock, at the time of his death, were paid. See generally *Lamborn v. National Park Bank,* 240 N.Y. 520, 148 N.E. 664 (1925) (holding that in the absence of an express termination date, the law will read into a letter of credit a reasonable period of time for presentment). However, the exact date of expiration is irrelevant, because the letter was expressly issued to cover only the debts of Mr. Mur-

dock. Furthermore, Mobil had almost immediate notice of Mr. Murdock's death. This is evidenced by the fact that Mobil had at least one representative at the funeral. It is also evidenced by the fact that soon thereafter, Mobil signed a contract with Mrs. Murdock, assigning her the distributorship. Mobil makes no claim that it made deliveries immediately following Mr. Murdock's death, but prior to learning of the death. Therefore, the Court concludes that Mobil was not an innocent party, acting in reliance upon the letter, without full knowledge of the facts.

It is, therefore, ORDERED, ADJUDGED and DECREED that Defendant, Atlanta National Bank's Motion for Summary Judgment be GRANTED, and that Plaintiff, Mobil Oil Corporation's Motion for Summary Judgment be DENIED, and that Plaintiff take nothing by way of this action.