**FIRST BANK OF ROWLETT, Appellant**

v.

**PARIS SAVINGS AND LOAN ASSOCIATION, Appellee.**

No. 05-87-00904-CV.

Court of Appeals of Texas, Dallas.

June 8, 1988.
Rehearing Denied July 11, 1988.

Nathan Allen, Jr., Laura L. Worsham, Dallas, for appellant.

Steven A. Harr, Gregory D. May, Dallas, for appellee.

Before HOWELL, LAGARDE and KINKEADE, JJ.

KINKEADE, Justice.

First Bank of Rowlett (First Bank) sued Paris Savings and Loan Association (Paris) for wrongful dishonor and breach of contract of a letter of credit issued by Paris. Paris and First Bank both moved for summary judgment and the trial court granted the Paris motion for summary judgment from which First Bank appeals.

The only real issue in this case is whether First Bank strictly complied with the terms of a letter of credit issued by Paris. We find that First Bank did strictly comply and reverse and render judgment for First Bank.

Paris issued an irrevocable documentary letter of credit on June 12, 1986, for $250,000.00, naming First Bank as beneficiary. The terms of the credit required that funds would be available until January 18, 1987, upon tender of a draft with certain requirements and accompanying documents. The required documents were the original letter of credit and an affidavit specifying that a default had occurred. On January 15, 1987, First Bank presented a draft for $250,000.00, the original letter of credit, and a document entitled "AFFIDAVIT" stating there had been a default. Paris gave First Bank notice of dishonor on January 20, 1987, stating that the draft and documents did not comply with the terms of the credit.

In its first two points of error, First Bank asserts that the trial court erred in granting the Paris motion for summary judgment because as a matter of law First Bank strictly complied in the demand for payment under the terms of the credit.

The letter of credit drawn by Paris on its stationery provides in pertinent part:

IRREVOCABLE LETTER OF CREDIT NO. 1033—2nd Revision & Amendment

| | |
|---|---|
| DATE: | June 12, 1986 |
| FOR THE ACCOUNT OF: | Casa Loma Estates Joint Venture |
| TO BENEFICIARY: | First Bank of Rowlett |
| AMOUNT: | $250,000.00 |
| EXPIRATION DATE: | January 18, 1987 |

GENTLEMEN:

We hereby establish, at the request and for the account of Casa Loma Estates Joint Venture our Irrevocable Letter of Credit No. 1033 in your favor. Funds under this Letter of Credit are available to you against one draft at SIGHT on us, accompanied by the original of this Letter of Credit.

This draft must be marked, "Drawn under Paris Savings and Loan Association Letter of Credit No. 1033".

This draft must be accompanied by the following documents:

1. An affidavit by an official of the Beneficiary stating that a default has occurred pursuant to the terms of that certain Promissory Note dated June 18, 1986, payable to First Bank of Rowlett in the original principal sum of One Million Seven Hundred Thirty Three Thousand Nine Hundred Ninety Two and 76/100 Dollars ($1,733,992.76) and all renewals and modifications thereof if any.

On January 15, 1987, First Bank presented a draft for $250,000.00 to Paris with the notation on the draft: "Drawn under Paris Savings and Loan Association Letter of Credit No. 1033, *dated June 12, 1986, i/a/o $250,000.00.*" (Emphasis added.) Accompanying the draft, First Bank sent a document printed on First Bank's stationery entitled "AFFIDAVIT", addressed to Paris which states the following:

This letter shall serve as written notice that Casa Loma Estates Joint Venture is in default pursuant to the terms of that certain Promissory Note dated June 18, 1986, payable to First Bank of Rowlett in the original principal sum of One Million Seven Hundred Thirty Three Thousand Nine Hundred Ninety Two and 76/100 Dollars ($1,733,992.76) and all renewals and modifications. *It is expressly understood there have been no renewals or modifications to the indebtedness described above.*

First Bank of Rowlett hereby respectfully requests the sum of Two Hundred

Fifty Thousand and no/100 Dollars ($250,000.00) due it under the terms of Paris Savings & Loan Association original Letter of Credit No. 1033 (2nd Revision & Amendment).

(Emphasis added.) The document is signed by a First Bank senior vice-president and includes a jurat.

■ Letters of credit involve three functionally related, but legally separate, agreements: (1) between the buyer/account party and seller/beneficiary involving some underlying transaction; (2) between the account party and the issuer who agrees to lend its credit to assist the account party; (3) between the beneficiary and the issuer of the letter of credit itself. *Westwind Exploration, Inc. v. Homestate Savings Association,* 696 S.W.2d 378, 381 (Tex.1985). The issuer's obligation to pay a sum of money on a letter of credit is contingent upon the beneficiary's proper presentment under the terms of the letter of credit. *Westwind,* 696 S.W.2d at 380–81; TEX. BUS. & COMM.CODE.ANN. § 5.114(a) (Vernon 1968). Proper presentment of a letter of credit occurs when the beneficiary *strictly complies* with the terms of the credit. *Westwind,* 696 S.W.2d at 381; *Temple–Eastex Inc. v. Addison Bank,* 672 S.W.2d 793, 795 (Tex.1984); *Delta Brands, Inc. v. MBank Dallas, N.A.,* 719 S.W.2d 355, 359 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). The issuer deals only with documents and is completely isolated from the underlying transaction. *Westwind,* 696 S.W.2d at 381. The question of whether First Bank strictly complied with the credit is a question of law for the court to decide when neither party pleads ambiguity. *Id.; Delta Brands,* 719 S.W.2d at 359. First Bank and Paris agree that the letter of credit involved in the present case is not ambiguous.

■ Paris claims that the draft was not properly marked as required by the credit because the additional words "dated June 12, 1986 i/a/o $250,000.00" were included in the notation at the top of the draft. The credit provided that "[t]his draft *must* be marked, 'Drawn under Paris Savings and Loan Association Letter of Credit No. 1033'." (Emphasis added.) First Bank did include this language on the drafts, and added immediately thereafter, "dated June 12, 1986, i/a/o $250,000." There is no prohibition against including a provision in a letter of credit that specifically sets out the precise form of any demand made on the credit, along with a provision that makes demand in the specified form a condition of the issuer's obligation to pay. *Temple–Eastex,* 672 S.W.2d at 798. First Bank met the demand set by Paris to include specified language on the draft. Certainly there was strict compliance with the terms of the letter of credit, and the additional identifying language of the date that the credit was formed and the amount involved is mere surplusage that could in no way cause fraud, confusion, or harm to Paris. The extra words do not alter any conditions attached to the letter of credit, as in *Courtaulds North America, Inc. v. North Carolina National Bank,* 528 F.2d 802 (4th Cir.1975) (the credit required invoice to state "100% acrylic yarn": the invoice stated "imported acrylic yarn"); or *Beyene v. Irving Trust Co.,* 762 F.2d 4 (2d Cir.1985) (the credit required "Mohamed Soran"). These cases demonstrate instances where the word "imported" or the name "Soran" meant that the beneficiary did not strictly comply. In the present case, First Bank strictly complied with the terms required and added additional identifying language.

■ Paris complains that the affidavit fails to include the words "thereof if any" which are set out at the end of the paragraph in the letter of credit designating the required contents of the affidavit. First Bank stated in the affidavit that "it is expressly understood there have been no renewals or modifications to the indebtedness...." First Bank is merely answering the inquiry as demanded by the credit concerning renewals and modification. The affidavit includes all information required by the credit. To have used the language *and all renewals and modifications thereof if any* verbatim would not have answered the questions demanded by the letter of credit. First Bank simply and

correctly stated that "there have been no renewals or modifications to the indebtedness described above."

Additionally, in its notification of dishonor, Paris indicated that the documents are nonconforming because the affidavit states, "This *letter* shall serve as written notice ...," and the "notary subscription is in improper form." In argument before this court, Paris concedes that the terminology used in First Bank's document does not affect its characterization as an affidavit. Paris does not refer to any abnormality in the notary subscription in its appeal to this Court through its oral argument or in its appellate brief. First Bank's first and second points of error are sustained.

In its third point of error, First Bank claims that the granting of Paris' motion for summary judgment was improper because there are genuine issues of material fact concerning First Bank's presentment and compliance with the terms of the letter of credit.

Neither party pleaded ambiguity; therefore, whether there has been compliance with the terms of the credit is a question of law for the court to decide. *Westwind,* 696 S.W.2d at 381; *Delta Brands,* 719 S.W.2d at 359. First Bank's third point of error is overruled.

First Bank contends in its fourth point of error that the court erred in denying its motion for summary judgment because Paris breached its contract by failing to make payment under the terms of the letter of credit and wrongfully dishonored First Bank's presentment for payment.

We agree that, as a matter of law, First Bank made proper presentment under the terms of the letter of credit and Paris wrongfully dishonored that presentment. When both parties file motions for summary judgment and one motion is granted, the trial court judgment becomes final and appealable. The reviewing court should then determine all questions presented on appeal including the propriety of the order overruling the losing party's motion. If reversible error is found, the court should render such judgment as the trial court should have rendered. *Tobin v. Garcia,* 159 Tex. 58, 316 S.W.2d 396, 400 (1958); *Plaza of the Americas, Ltd. v. Rodgers,* 728 S.W.2d 827, 828 (Tex.App.—Dallas 1987, no writ); *see Members Mutual Insurance Co. v. Hermann Hospital,* 664 S.W.2d 325, 328 (Tex.1984). Therefore, we reverse the trial court's take nothing summary judgment, and render judgment for First Bank for $250,000.00, plus prejudgment interest at the rate of ten percent from January 20, 1987, to date of judgment, *McCann v. Brown,* 725 S.W.2d 822, 825-26 (Tex.App.—Ft. Worth 1987, no writ); *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 554 (Tex.1985), and post-judgment interest at the rate of ten percent from the date of judgment until paid in full. TEX.REV.CIV.STAT.ANN. art. 5069–1.05 (Vernon Supp.1988).