**Freddy VEST and Yellow Rose Custom Homes, Inc. Appellant,**

v.

**PILOT POINT NATIONAL BANK, Appellee.**

No. 2–98–164–CV.

Court of Appeals of Texas, Fort Worth.

July 8, 1999.

Rehearing Overruled Aug. 12, 1999.

McDowell Collmer, L.L.P., John T. McDowell, Clinton E. Wells, Jr., Michael T. Fuerst, Attorneys, Houston, for Appellant.

Minor & Jester, Tom D. Jester Jr., Mark G. Mann, Denton, for Appellee.

Panel B: DAUPHINOT, BRIGHAM, and HOLMAN, JJ.

## OPINION

WILLIAM BRIGHAM, Justice.

Appellants Freddy Vest ("Vest") and Yellow Rose Custom Homes, Inc. ("Yellow Rose") appeal the trial court's grant of summary judgment in favor of Appellee Pilot Point National Bank ("Bank"). In this appeal we will determine whether a beneficiary of a letter of credit which in-

corporates the Uniform Customs and Practices for Documentary Credits ("UCP"), upon presentation of a draft or demand for payment, must reasonably or strictly comply with the terms of the credit. For the following reasons, we affirm.

## PROCEDURAL HISTORY

Appellants sued Appellee Bank and Denton County for conversion, negligence, and DTPA violations, alleging that Appellee Bank wrongfully honored an irrevocable letter of credit issued by the Bank. Appellants also alleged that Denton County[1] prevented Appellants from performing under a contract for completion of road improvements and wrongfully levied on the letter of credit. Appellee Bank filed a "no-evidence" motion for summary judgment pursuant to rule 166a(i),[2] which was initially denied, but upon rehearing, the denial was set aside and a final summary judgment, ordering that Appellants take nothing, was entered. Appellants filed a cross-motion for summary judgment, which was denied.[3] The summary judgment order did not specify the ground or grounds relied upon by the trial court.

## STANDARD OF REVIEW

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. See TEX.R. CIV. P. 166a(i). The motion must specifically state the elements for which there is no evidence. See id. The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. See id. The non-

1. Denton County and Appellants subsequently settled with a payment by Denton County to Appellants of $80,000, and an order of dismissal as to Denton County was entered prior to summary judgment.

2. In its motion, Appellee Bank challenged Appellants to produce summary judgment evidence raising a genuine issue of material fact on numerous specified elements.

3. The order on Appellee Bank's motion for summary judgment stated that "any relief not specifically granted in this order is hereby denied."

movant may raise a genuine issue of material fact by showing that a reasonable jury could return a verdict in the nonmovant's favor. *Cf. Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255–56, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986) (interpreting FED.R.CIV.P. 56); *see also* TEX.R. CIV. P. 166a(i) cmt (stating that the response "need only point out evidence that raises a fact issue on the challenged elements").

The burden of proof is on the movant; we resolve all doubts against the movant, and view the evidence and its reasonable inferences in a light most favorable to the nonmovant. *See Friendswood Dev. Co. v. McDade + Co.,* 926 S.W.2d 280, 282 (Tex. 1996); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965).

When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented. *See Commissioners Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997) (citing *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988)). The reviewing court should determine all questions presented on appeal including the propriety of the order overruling the losing party's motion, and render the judgment the trial court should have rendered. *See Agan,* 940 S.W.2d at 81.

When reviewing a summary judgment granted on general grounds, the appeals court considers whether any theories set forth in the motion will support the summary judgment. *See Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995). Appellee's motion for summary judgment was grounded in the theory that Appellants could not prove that Appellee Bank wrongfully honored the presentment, and more specifically, that Appellants could produce no evidence: (1) that Appellee Bank unlawfully assumed control over Appellants' certificate of deposit; (2) of any element of negligence; and (3) that suit could not be maintained under the DTPA for various reasons. Therefore, we will consider whether the theories presented on appeal support summary judgment, viewing the evidence in a light most favorable to Appellants.

### SUMMARY JUDGMENT EVIDENCE

On June 16, 1995, irrevocable letter of credit number 84 for $120,000 was issued by Appellee Bank, at the request of Appellants, for the benefit of Denton County, Texas.[4] On that same day, Appellant Yellow Rose opened and assigned a certificate of deposit in the amount of $120,000 to Appellee Bank. The letter of credit provided, in pertinent part, that the Appellee Bank shall honor drafts submitted by Denton County upon presentation of a sight draft, accompanied by a statement executed by the judge of Denton County certifying that Appellant Yellow Rose failed to complete the road improvements, and the original letter of credit. The letter of credit was to expire if no action was taken by Denton County on or before the close of business on August 15, 1995. It also contained a choice of law clause, designating the UCP, 1993 revision, as the governing law, to the extent that the laws of the State of Texas were inconsistent with the UCP.

On August 15, 1995, Judge Jeff Moseley, Denton County Judge, delegated to Commissioner Sandy Jacobs the duty of presiding over the Denton County Commissioners Court. The Denton County Commissioners Court met in special session and after hearing testimony that the road work was not completed, that no

4. Prior to its issuance, Appellants approached the Denton County Commissioners Court seeking a variance to allow for the sale of lots in anticipation of the completion of a certain roadway. In exchange for issuing the variance, Appellants agreed to provide Denton County with the irrevocable letter of credit to secure Appellant Yellow Rose's performance of road improvements by August 15, 1995.

work had been done on the project in over three weeks, and that it would take approximately six weeks to complete the work, unanimously voted to issue a demand for payment on the letter of credit and present it to Appellee Bank.

The demand for payment, which is the focus of the parties' dispute, consists of a letter on Denton County Commissioners Court letterhead, addressed to Pilot Point National Bank, which certifies that Appellant Yellow Rose failed to complete the road improvements, and is signed by Sandy Jacobs as "Acting Denton County Judge." Printed in the letterhead is the name "Sandy Jacobs" over the words "Precinct 2," and the name "Judge Jeff Moseley" under the words "Denton County Commissioners Court." It was drafted by assistant district attorney Carmen Rivera–Worley and presented by her to Appellee Bank on August 15, 1997. Appellee Bank honored the presentment and released $120,000 to Denton County. Denton County later paid $66,299.50 to complete the road construction.

## POINTS ON APPEAL

In two points, Appellants contend the trial court erred in granting Appellee Bank's motion for summary judgment and in denying Appellants' motion for summary judgment, because Appellants proved as a matter of law that Denton County failed to strictly comply with the terms of the letter of credit. Specifically, Appellants argue that Sandy Jacobs was not "the Judge of Denton County, Texas," and that Appellee Bank cited no law supporting its contention that the Denton County Commissioners Court is empowered to appoint an "acting judge." Appellee Bank contends that the letter of credit expressly adopted the UCP as the law governing the letter of credit, and Denton County reasonably complied with its terms.

## STRICT OR REASONABLE COMPLIANCE

Our first inquiry is whether Denton County was required to reasonably comply with the terms of the letter of credit, or alternatively, whether strict compliance was the applicable standard.

Chapter 5 of the Texas Business and Commerce Code ("UCC") applies to letters of credit, including those issued by a bank. *See* TEX. BUS. & COM.CODE ANN. § 5.102(a) (Vernon 1994). Because the law of letters of credit is still developing, the rules embodied in this chapter express a framework of fundamental theories underlying letters of credit, but courts may apply a particular rule by analogy to cases not within the terms of the statute. *See id.* § 5.101 cmt., § 5.102(c) cmt. 2. Another source of law respecting letters of credit is the law of contracts. *See id.* § 5.101 cmt.

Section 5.114 of the Texas Business and Commerce Code provides in part that "[a]n issuer *must honor* a draft or demand for payment which *complies*[5] with the terms of the relevant [letter of] credit regardless of whether the goods or documents conform to the underlying contract ... between the customer and the beneficiary." *Id.* § 5.114(a). An issuer has an obligation to its customer:

> [to] examine documents with care so as *to ascertain that on their face they appear to comply* with the terms of the credit but unless otherwise agreed assumes no liability or responsibility for the genuineness, falsification or effect of any document which *appears on such examination to be regular on its face.*

*Id.* § 5.109(b). These provisions do not expressly require strict compliance; therefore, we turn to the cases for further guidance.

The cases addressing the standard of compliance generally cite two Texas Supreme Court cases: *Westwind Exploration, Inc. v. Homestate Sav. Ass'n,* 696 S.W.2d 378 (Tex.1985) and *Temple–Eastex Inc. v. Addison Bank,* 672 S.W.2d 793

---

**5.** All emphasis is ours, unless otherwise indicated.

(Tex.1984). *See, e.g., New Braunfels Nat'l Bank v. Odiorne,* 780 S.W.2d 313, 316 (Tex.App.—Austin 1989, writ denied) (finding that Texas follows the rule of strict compliance); *Universal Sav. Ass'n v. Killeen Sav. & Loan Ass'n,* 757 S.W.2d 72, 76 (Tex.App.—Houston [1 st Dist.] 1988, no writ) (noting that the beneficiary of a letter of credit must strictly comply with the conditions of payment); *First Bank v. Paris Sav. and Loan Ass'n,* 756 S.W.2d 329, 331 (Tex.App.—Dallas 1988, writ denied) (reciting the rule that "proper presentment of a letter of credit occurs when the beneficiary strictly complies with the terms of the credit").

In *Westwind Exploration,* the supreme court cites two earlier cases from that court for the proposition that presentment of a draft or demand for payment pursuant to a letter of credit requires the beneficiary to strictly comply with its terms.[6] *See Westwind Exploration,* 696 S.W.2d at 380–81. One is *Temple–Eastex,* and the other is *Republic Nat'l Bank v. Northwest Nat'l Bank,* 578 S.W.2d 109 (Tex.1978). We will examine each, in turn.

In *Temple–Eastex,* the supreme court addressed whether the demand by the beneficiary complied with the terms of the letter of credit. *See Temple–Eastex,* 672 S.W.2d at 795. It noted that "[t]he Texas cases *indicate* that the beneficiary of a letter of credit must strictly comply with the conditions of payment before he is entitled to receive payment thereunder."[7] *See id.* The court then cites two courts of appeals decisions,[8] which we will examine below.

In *Republic Nat'l Bank,* the pertinent issue before the supreme court was whether the instrument issued was a valid letter of credit or a guaranty. *See Republic Nat'l Bank,* 578 S.W.2d at 113. The court noted the lack of Texas case law on the question, and determined to consult authority from other jurisdictions as well as chapter 5 of the Business and Commerce Code. *See id.* The inquiry in that case required the court to distinguish between a true letter of credit and a "standby credit" or "guaranty credit." *See id.* at 112–14. Citing section 5.114(a), the court noted that "[i]f a *conforming presentation* of documents is made, the issuer of a credit is obligated to pay without reference to the rights and obligations of the parties to the underlying contract." *See id.* at 114.

Examining the cases relied on by the court in *Temple–Eastex,* the Houston Court of Civil Appeals, in holding that presentment was not proper if made after the expiration date of the letter of credit, cited a similar case in Massachusetts that required strict compliance *"where a date is fixed as the time for the expiration of a letter of credit." See Cypress Bank,* 610 S.W.2d at 187 (citing *G. Jaris & Co. v. Banque D'Athenes,* 246 Mass. 546, 141 N.E. 576 (1923)).

Finally, the Tyler court in *Siderius* held that the documents presented with the draft at issue neither strictly nor substantially complied with the terms of the letter of credit. *See Siderius,* 583 S.W.2d at 862–63. Citing the general rule that an issuer must honor a draft if the beneficiary presents documents which *precisely and*

---

**6.** The court went on to hold that the beneficiary's demand for payment, which was accompanied by statements evidencing crude oil deliveries in July, August, September, and October of 1992, did not strictly comply with the letter of credit, which required on presentment for payment a copy of statements evidencing delivery of crude oil during the month of August, 1992. *See Westwind Exploration,* 696 S.W.2d at 379–82.

**7.** The *Temple–Eastex* court found that the demand by the distributee of the dissolved ben-

eficiary, which included notification to the issuer that the distributee was the parent company and sole successor to the rights of the dissolved beneficiary, was sufficient to collect under the letter of credit. *See id.* at 794–97.

**8.** They are *Cypress Bank v. Southwestern Bell Tel. Co.,* 610 S.W.2d 185 (Tex.Civ.App.—Houston [1 st Dist.] 1980, writ ref'd n.r.e.) and *Siderius, Inc. v. Wallace Co.,* 583 S.W.2d 852 (Tex.Civ.App.—Tyler 1979, no writ).

*strictly conform* to the letter of credit, that court relied on the language of section 5.114(a) and cases out of the Third, Fourth, and Ninth Circuits. *See id.* at .859.

■ To summarize, the state of the law in Texas on this issue is as follows. Section 5.114(a) makes it mandatory for an issuer to honor a demand for ,payment which *complies* with the terms of the letter of credit. *See* TEX. BUS. & COM.CODE ANN. § 5.102(a). The issuer is obliged to examine the face of the documents with care to ascertain that *they appear to comply* with the credit. *See id.* § 5.109(b). The Texas Supreme Court, without detailed analysis, first described the standard as a *conforming presentation. See Republic Nat'l Bank*, 578 S.W.2d at 114. It later found that courts of appeals in Texas *indicate* that *strict compliance* is the appropriate standard. *See Temple–Eastex*, 672 S.W.2d at 795. The *Temple–Eastex* court relied on two courts of appeals, one of which imposed a rule of *strict compliance* where an expiration date is fixed and the demand is presented to the issuer after that date. *See Cypress Bank*, 610 S.W.2d at 187. The other simply noted the *strict compliance* standard to be the general rule. *See Siderius*, 583 S.W.2d at 859.

■ To deduce that an issuer wrongfully honored a demand that contains a documentary discrepancy,[9] such as the one in the case at bar, from the general rule that an issuer *must* honor a demand for payment that *strictly complies* with the terms of the letter of credit, requires a presump-

tive leap in logic that we will not take. Furthermore, for every general rule there is an exception.[10] Although maintaining the integrity of the strict compliance rule is important to the usefulness of letters of credit as a commercial tool, we agree with the Austin court that even where strict compliance is the standard, "oppressive perfectionism" is not demanded. *See Odiorne*, 780 S.W.2d at 316–17.

In *Odiorne*, Justice Jones noted a distinction between discrepancies that relate to the business of the underlying transaction and those relating to the issuer's business of banking.[11] *See id.* at 317–18. The strict compliance rule assumes that issuers should not be forced to determine whether certain types of documentary discrepancies are significant to its customer. *See id.* at 317 (quoting from J. Dolan, The Law of the Letters of Credit ¶ 6.03, at S6–4 (Supp. 1989)).

Having examined the strict compliance standard, we must next determine the effect of the express adoption of the UCP in the letter of credit, keeping in mind that the law of contracts is a viable source of law in our inquiry.

A "letter of credit" is an engagement by a bank or other person made at the request of a customer that the bank will honor drafts or other demands for payment upon compliance with the *conditions* specified in the credit. *See* TEX. BUS. & COM.CODE ANN. § 5.103(a)(1). The conditions ordinarily found in letters of credit are *express* conditions as to (1) the *time*

---

9. A documentary discrepancy is a discrepancy between the terms of the letter of credit and the documentary demand for payment. The term "document," as applied in this case, means a notice to the issuer that its customer has defaulted. *See* TEX. BUS. & COM.CODE ANN. § 5.103(a)(2).

10. One such exception is noted in section 5.114(b), which provides that when documents appear on their face to comply with the letter of credit but a required document does not conform to the warranties made on negotiation or transfer of a title document or certified security, or is forged or fraudulent, the

issuer *must* honor the draft if demanded by an innocent third party and *in all other cases* an issuer acting in good faith *may* honor the draft or demand despite notification from the customer of some defect not apparent on the face of the documents. *See* TEX. BUS. & COM. CODE ANN. § 5.114(b)(1),(2) and cmt. 2.

11. Although the discrepancy here does not fall squarely into either category of discrepancies distinguished in *Odiorne*, we believe the court's reasoning and analysis is useful to our inquiry.

within which demands may be made upon the issuer and (2) the *documents* which must accompany any demand or draft for payment. *See* 7A R. ANDERSON, UNIFORM COMMERCIAL CODE, § 5–102:186 at 104 (3d ed.1995). Here, the letter of credit provided that the draft for payment include a statement executed by the judge of Denton County.[12] It also incorporated the UCP as the law governing the credit, to the extent Texas laws are inconsistent with the UCP.

Letters of credit are governed by the rules of construction applicable to ordinary contracts. *See Republic Nat'l Bank,* 578 S.W.2d at 115. Courts must construe in accordance with the language of the contract. So long as the terms are free from ambiguity and do not conflict with the law, those terms establish the parties' rights under the contract. *See Citizens Nat'l Bank v. Texas & P. Ry. Co.,* 136 Tex. 333, 150 S.W.2d 1003, 1006, *cert. denied,* 314 U.S. 656, 62 S.Ct. 109, 86 L.Ed. 526 (1941). We see no reason not to permit parties to a letter of credit to adopt what some authorities view as a more liberal standard of presentment, and Appellant has cited no authority to the contrary. We are bound by the parties' intent as expressed in the contract.

The UCP, a compilation of internationally accepted commercial customs and usages, can have the force of law when incorporated into a letter of credit. *See Bank One, Texas, N.A. v. Little,* 978 S.W.2d 272, 278 (Tex.App.—Fort Worth 1998, writ denied). The standard for determining whether documents comply with the terms and conditions of the credit is set forth in article 13:

> Banks must examine all documents stipulated in the Credit with *reasonable care, to ascertain whether or not they appear, on their face, to be in compliance* with the terms and conditions of the Credit. Compliance of the stipu-

lated documents on their face with the terms and conditions of the Credit, shall be determined by international standard banking practice as reflected in these Articles. Documents *which appear on their face to be inconsistent* with one another will be considered as not appearing on their face to be in compliance with the terms and conditions of the Credit. . . .

UNIFORM CUSTOMS AND PRACTICES FOR DOCUMENTARY CREDITS, art. 13(a) (1993 Revision, I.C.C. Brochure No. 511, *Documentary Credits: UCP 500 and 400 Compared*). The drafters' commentary accompanying this provision provides:

> Currently, the notion of reasonable care is usually applied by courts, regardless of legal system or geographic location, in conjunction with the doctrine of "strict compliance". [sic] Yet, as any experienced banker knows, a word-by-word, letter-by-letter correspondence between the documents and the Credit terms is a practical impossibility. Thus, courts wedded to a "mirror image" version of strict compliance and reasonable care have failed to provide a functional standard of document verification. . . .

I.C.C. Brochure No. 511, *Documentary Credits: UCP 500 and 400 Compared* at 39.

Although we are not convinced that the UCP standard is more liberal than the UCC standard, it is clear that under either the UCP or the UCC, the issuer is obliged to examine the face of the documents with care to determine whether the demand is inconsistent with the letter of credit, or irregular on its face. Furthermore, neither standard requires the demand to be a word-for-word or mirror image duplicate. Under the UCP, the issuer must use "reasonable care" in making its determination. *See id.* Our concern, then, is whether the trial court could have properly granted summary judgment on

---

12. Appellants do not contend that the language in dispute creates a condition prece-   dent to payment.

the ground that the language at issue in the demand was not inconsistent with the letter of credit or irregular on its face, mindful that the issuer was bound to exercise "reasonable care" in making its determination.

The express terms of the letter of credit required a statement executed by "THE JUDGE OF DENTON COUNTY CERTIFYING THAT YELLOW ROSE CUSTOM HOMES, INC. HAS FAILED TO COMPLETE [ITS] OBLIGATION RELATING TO ROAD IMPROVEMENTS AND SUCH FAILURE ENTITLES DENTON COUNTY TO DRAW ON IRREVOCABLE LETTER OF CREDIT # 84." (emphasis theirs). The demand for payment consisted of the following statement executed by Sandy Jacobs:

> Pursuant to the terms of your Letter of Credit No. 84, Pilot Point National Bank is hereby notified as follows:
>
> As Acting County Judge for Denton County, I hereby certify that Yellow Rose Custom Homes, Inc. has failed to complete its obligations relating to road improvements and that such failure entitles Denton County to draw on the Irrevocable Letter of Credit Number 84.

Jacobs' name was printed in the letterhead over the words "Precinct 2."

Appellants contend that "[t]he Judge of Denton County" means the Denton County Judge, and that because Judge Moseley was the Denton County Judge, and there is no official position of "acting county judge," the presentment was nonconforming. This argument fails to take into consideration that a banker, in examining the face of the documents, is charged with knowledge of banking practices, but is not expected to be familiar with the structure of county government and courts, or whether the commissioners court is authorized by law to appoint an acting county judge.[13] *See S.B. Int'l, Inc. v. Union Bank,* 783 S.W.2d 225, 227 (Tex.App.—

Dallas 1989, no writ). In short, the determination of inconsistency must be made from the perspective of the issuing bank. Here, it is not unreasonable to conclude that there is nothing irregular or inconsistent between the requirement that a statement be signed by the judge of Denton County, and the corresponding demand, signed by a person whose name is printed in the official Denton County Commissioners Court letterhead, identifying herself as acting county judge. Furthermore, we do not think that Appellee Bank, faced with this discrepancy, should be placed in a position of having to determine whether this particular discrepancy would be significant to Appellants. Had Appellants wanted to make the requirement of Moseley's signature on the demand an express condition, it should have been explicit, so that Appellee Bank would know precisely and unequivocally its duties with regard to the letter of credit. *See Marino Indus. Corp. v. Chase Manhattan Bank,* 686 F.2d 112, 115 (2d Cir.1982).

For these reasons, we hold that summary judgment could have properly been granted on the ground that Appellee reasonably complied with the terms of the letter of credit, and specifically, on the grounds that Appellants produced no evidence that Appellee Bank: (1) unlawfully assumed control over Appellants' certificate of deposit; (2) breached a duty; or (3) that suit could be maintained under the DTPA. We overrule Appellants' points.

### CONCLUSION

Having overruled both of Appellants' points, we affirm the trial court's grant of summary judgment.

---

13. We find no provision of law that vests a commissioners court with authority to appoint an acting county judge in the absence of a vacancy in office; however, that is not dispositive of our analysis.