**EASTMAN SOFTWARE, INC., Appellant,**

v.

**TEXAS COMMERCE BANK, NATIONAL ASSOCIATION, Appellee.**

No. 06–99–00148–CV.

Court of Appeals of Texas, Texarkana.

Argued July 11, 2000.

Decided Aug. 4, 2000.

Opinion on Rehearing Aug. 31, 2000.

Rehearing Overruled Aug. 31, 2000.

Craig W. Weinlein, Marvin S. Sloman, Carrington, Coleman, et al., Dallas, for appellant.

Bill Jones, Elenor H. Hodges, Denise Smith, Cash Jones, LLP, Houston, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Eastman Software, Inc., a Massachusetts corporation, sued Texas Commerce Bank, National Association[1] for (Texas Commerce Bank)

$250,000.00 (plus attorney's fees, interest, and court costs) for its alleged wrongful dishonor of a standby letter of credit given in favor of Eastman. Eastman contended that, notwithstanding its presentation of proper sight drafts and documents as required by the letter of credit, and the existence of $250,000.00 remaining to be drawn, Texas Commerce wrongfully refused to pay that amount.

Both sides moved for summary judgment. On September 2, 1999, the trial court ordered, *inter alia*, that a final judgment be entered awarding Eastman $250,000.00 plus prejudgment interest to the date of the judgment, for a total of $274,041.09, plus $85,000.00 in attorney's fees, plus postjudgment interest at ten percent per annum until paid.

Nine days later, on September 11, the trial court, apparently *sua sponte*, set aside its September 2 order, granted Texas Commerce's motion for summary judgment, and awarded Texas Commerce $60,000.00 in attorney's fees. It is from this order that Eastman now appeals.[2]

*Background Facts*

On May 8, 1997, Texas Commerce issued its irrevocable standby letter of credit No. D–470231, which provides as follows:

APPLICANT:
RONALD L. JENSEN
2121 PRECINCT LINE ROAD
HURST, TEXAS 76054

Beneficiary:
EASTMAN SOFTWARE, INC.
600 TECHNOLOGY PARK DRIVE
BILLERICA, MA 01821

AMOUNT: USD 750,000.00
(SEVEN HUNDRED FIFTY THOUSAND AND 0%oo UNITED STATES DOLLARS)

ATTENTION: MR. JOHN SUCZYNSKI, DIRECTOR

GENTLEMEN:

1. Now known as Chase Bank of Texas, N.A.

2. The order actually directs Texas Commerce to submit a new final judgment based on the order. However, the record does not contain any other document so entitled. It appears that the parties have treated the trial court's last order as its final judgment, and we will do so as well.

WE HEREBY ESTABLISH OUR IRREVOCABLE STANDBY LETTER OF CREDIT NO. D–470231, IN YOUR FAVOR, FOR ACCOUNT OF THE ABOVE–NAMED APPLICANT, FOR A SUM OR SUMS NOT EXCEEDING THE ABOVE–MENTIONED AMOUNT, EXPIRING ON MARCH 25, 1998, 4:00 P.M. CENTRAL STANDARD TIME, AT OUR COUNTERS, AVAILABLE FOR PAYMENT AGAINST YOUR DRAFT(S) ON U.S. AT SIGHT, MARKED: "DRAWN UNDER TEXAS COMMERCE BANK NATIONAL ASSOCIATION IRREVOCABLE STANDBY LETTER OF CREDIT NO. D–470231, DATED MAY 8, 1997", ACCOMPANIED BY:
1. BENEFICIARY'S MANUALLY SIGNED STATEMENT ON ITS LETTERHEAD READING EXACTLY AS FOLLOWS:

"I, THE UNDERSIGNED, AN AUTHORIZED REPRESENTATIVE OF EASTMAN SOFTWARE, INC., HEREBY CERTIFY THAT WHETSTONE TECHNOLOGIES, LLC, HAS FAILED TO MAKE THE PAYMENT DUE ON THE ____DAY OF_____, 19__, IN THE AMOUNT OF $250,000.00, AND THAT PAYMENT HAS BEEN REQUESTED AND NOT RECEIVED BY EASTMAN SOFTWARE, INC."

PARTIAL DRAWINGS ARE ALLOWED.

IT IS A CONDITION THAT IF THIS LETTER OF CREDIT IS NOT DRAWN AGAINST ON THE FOLLOWING DATES, THE LETTER OF CREDIT AMOUNT SHALL BE AUTOMATICALLY DECREASED IN ACCORDANCE WITH THE FOLLOWING SCHEDULE:

| ON (DATE) | AMOUNT OF DECREASE |
| --- | --- |
| SEPTEMBER 5, 1997 | $250,000.00 |
| DECEMBER 24, 1997 | $250,000.00 |

THIS LETTER OF CREDIT EXPIRES AT OUR COUNTERS ON MARCH 25, 1998.

ALL BANKING CHARGES OTHER THAN OURS ARE FOR THE APPLICANT'S ACCOUNT.

THE ORIGINAL OF THIS LETTER OF CREDIT AND SUBSEQUENT AMENDMENTS, IF ANY, MUST ACCOMPANY ALL DRAWINGS.

WE HEREBY ENGAGE WITH YOU THAT ALL DRAFT(S) DRAWN AND PRESENTED IN ACCORDANCE WITH THE TERMS OF THIS LETTER OF CREDIT WILL BE HONORED ON DUE PRESENTATION AND DELIVERY OF DOCUMENT(S) TO US, ATTENTION: DOCUMENTARY SERVICES DIVISION, 717 TRAVIS, HOUSTON,TEXAS 77002.

UNLESS OTHERWISE EXPRESSLY STATED HEREIN, THIS LETTER OF CREDIT IS SUBJECT TO THE UNIFORM CUSTOMS AND PRACTICE FOR DOCUMENTARY CREDITS (1993 REVISION), INTERNATIONAL CHAMBER OF COMMERCE BROCHURE NO. 500.

PLEASE CONTACT U.S. AT (713) 216–5665 OR (713) 216–4739 IF YOU HAVE ANY QUESTIONS CONCERNING THIS LETTER OF CREDIT.

The following material facts concerning this letter of credit are not in dispute:

1) Texas Commerce issued the letter in favor of Eastman;

2) Eastman made a presentation for payment of $250,000.00 under the letter of credit which Texas Commerce honored and paid on July 3, 1997;

3) Eastman made a presentation for payment of $250,000.00 under the letter of credit which Texas Commerce honored and paid on September 15, 1997; and

4) Eastman made a presentation for payment of $250,000.00 under the letter of credit on December 26, 1997, which Texas Commerce dishonored on December 30,

1997, for the following reason: "Drawing received after the scheduled date."

It is further undisputed that on the letter of credit Texas Commerce Bank employees endorsed the following on the back of the letter of credit:

7/3/97

Drawing paid in the amount of $250,000.00

Remaining Letter of Credit Balance $500,000.00

———s———————

Connie Risicato, Vice President

Texas Commerce Bank National Association

09/16/97

Drawing paid in the amount of $250,000.00

Remaining Letter of Credit Balance $250,000.00

———s———————

Teresa Dever—International Officer

Texas Commerce Bank National Association

### Eastman's Contentions

Eastman raises five issues on appeal.

First, by the express terms of the letter of credit, there is no scheduled date for Texas Commerce's receipt of a presentation, and thus Eastman was entitled to summary judgment for wrongful dishonor and Texas Commerce was not entitled to summary judgment.

Second, having rejected Eastman's presentation for the sole reason that it was "received after the scheduled date," Texas Commerce is precluded from later arguing any other reason for dishonor. Therefore, Texas Commerce was not entitled to summary judgment on the ground that the balance of available funds under the letter of credit was zero after September 16,

1997, because of a previous automatic decrease in the amount of the letter of credit occurring on September 5, 1997.

Third, even if Texas Commerce was not precluded from arguing a new reason for dishonor, it is still not entitled to summary judgment. Texas Commerce's newly stated reason for dishonor relies on an erroneous legal interpretation of the letter of credit that asks the Court to interpret the letter in such a manner that an automatic decrease of $250,000.00 occurred on September 5, 1997. Under the proper legal interpretation of the letter, no such automatic decrease occurred, because it is undisputed that Texas Commerce honored and paid a presentation for payment of $250,000.00 under the letter on July 3, 1997.

Fourth, Texas Commerce's erroneous legal interpretation of the letter of credit requires the Court to conclude that there was an occurrence of a nondocumentary condition for an automatic decrease in the amount of the letter of credit. Pursuant to the controlling law, which is expressly incorporated into the terms of the letter of credit, nondocumentary conditions should be disregarded and ignored.

Fifth, even if Texas Commerce was entitled to summary judgment, the trial court erred in awarding attorney's fees to Texas Commerce. A bank that successfully defends a claim for breach of contract or wrongful dishonor of a letter of credit is not entitled to attorney's fees.[3]

### Summary Judgment

■ In this case, both parties moved for summary judgment. The trial court, in its final order, granted Texas Commerce's motion and denied Eastman's.

When a trial court grants a summary judgment, the losing party appeals, and

---

**3.** Prior to oral argument and submission, Texas Commerce advised the Court that it was conceding this point, i.e., it agreed that it was not entitled to attorney's fees under the statute in effect at the time of this letter of credit.

The Act on which Texas Commerce relied (TEX. BUS. & COM.CODE ANN. § 5.111(e) (Vernon Supp.2000)) had not yet become effective at the time of relevant events in this case.

an appellate court finds reversible error in the judgment, the appellate court's normal action is to reverse the trial court's judgment and remand the cause to the trial court. An exception may occur when both parties moved for summary judgment and one such motion was granted, but the other denied. Then the appellate court should determine all questions presented, and may reverse the trial court judgment and render such judgment as the trial court should have rendered, including rendering judgment for the other movant. *Casa Ford, Inc. v. Ford Motor Co.*, 951 S.W.2d 865, 876–77 (Tex.App.-Texarkana 1997, writ denied), *quoting Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988).

### General Rules of Law Applicable to Letters of Credit

A letter of credit is an instrument that obligates the issuer to pay a sum of money to the beneficiary on the beneficiary's proper presentment of the letter. The drafting of a letter of credit generally involves an account party, a beneficiary, and an issuer. In the normal commercial situation, the account party and the beneficiary are doing business as buyer and seller, respectively. The seller does not wish to rely solely on the credit of the buyer, and therefore a letter of credit may be used to substitute the issuer's credit for that of the buyer. Usually, the letter of credit involves three functionally related, but legally separate, agreements: 1) an agreement between the buyer/account party and the seller/beneficiary; 2) between the account party and the issuer; and 3) the letter of credit, between the issuer and the beneficiary. *Westwind Exploration, Inc. v. Homestate Sav. Ass'n*, 696 S.W.2d 378, 381 (Tex.1985). The issuer is commonly a bank, the account party is usually a buyer of goods, and the beneficiary normally a seller of goods. 10 C.J.S. *Bills and Notes* § 342 (1995). A "standby" or "guaranty" letter of credit is one under which the issuer must honor demands for payment only if the beneficiary presents documen-

tation indicating that the issuer's customer has defaulted on the underlying contract. *Republic Nat'l Bank of Dallas v. Northwest Nat'l Bank of Fort Worth*, 578 S.W.2d 109, 113–14 (Tex.1978); 10 C.J.S. *Bills and Notes* § 346 (1995).

■ The issuer's obligation to pay a sum of money on a letter of credit occurs when the beneficiary strictly complies with the terms of the letter of credit. *First Bank of Rowlett v. Paris Sav. and Loan Ass'n*, 756 S.W.2d 329, 331 (Tex.App.-Dallas 1988, writ denied). The issuer will honor drafts or other demands for payment on compliance with the conditions specified in the letter of credit. Tex. Bus. & Com.Code Ann. § 5.102(a)(10) (Vernon Supp.2000); *Vest v. Pilot Point Nat'l Bank*, 996 S.W.2d 9, 14 (Tex.App.-Fort Worth 1999, pet. denied). The conditions ordinarily found in letters of credit are express conditions regarding 1) the time within which demands must be made on the issuer, and 2) the documents which must accompany any demand for payment. *Vest*, 996 S.W.2d at 14–15. The issue raised in this appeal pertains to the *time* within which Eastman's demand was made on Texas Commerce.

■ Letters of credit are governed by the construction rules of ordinary contracts. *Republic Nat'l Bank of Dallas*, 578 S.W.2d at 115; *Vest*, 996 S.W.2d at 15. Courts must construe the letter of credit in accordance with the language of the contract. So long as the terms are free from ambiguity and do not conflict with the law, those terms establish the parties' rights under the contract. *Vest*, 996 S.W.2d at 15. If ambiguity of the contract is not pled, as in the present case, then the question of whether one of the parties strictly complied with the letter of credit is a question of law for the court to decide. *Westwind Exploration, Inc.*, 696 S.W.2d at 381. We review the trial court's legal conclusions *de novo*. *MCI Telecommunications Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex.1999).

## Analysis

█ In our *de novo* review of the trial court's determination in this case, we note initially that the letter of credit contains a specific date of expiration, March 25, 1998, which date is set forth *twice* in the letter, and requires specified documentation be presented "AT OUR COUNTER," "FOR A SUM OR SUMS NOT EXCEEDING" $750,000.00. As a general rule, in a letter of credit containing a specific date of expiration, liability is fixed by presentment of a draft to the bank, together with all required documentation, prior to the expiration date. *First State Bank of Corpus Christi v. Shuford Mills, Inc.,* 716 S.W.2d 649, 650 (Tex.App.-Corpus Christi 1986, writ ref'd n.r.e.); *Cypress Bank v. Southwestern Bell Tel. Co.,* 610 S.W.2d 185, 187 (Tex.Civ.App.-Houston [1st Dist.] 1980, writ ref'd n.r.e.).

"Presentation" is defined as the delivery of proper documentation to the issuer for honor or giving of value under a letter of credit. TEX. BUS. & COM.CODE ANN. § 5.102(a)(12) (Vernon Supp.2000). There is no question in this case of Eastman's proper presentation; there is also no question in this case that the presentation was accomplished prior to the stated date of expiration of the letter of credit. There is further no question that, to the date of its presentment on December 26, 1997, Texas Commerce had paid out under the letter of credit $500,000.00, $250,000.00 below the limit of its contractual obligation. Yet, under the interpretation of the condition of the credit relied on by Texas Commerce, and followed by the trial court, the amount payable under the letter of credit automatically reduced by $250,000.00 on December 24, 1997, and since Eastman had already drawn $500,000.00 on that date, the letter effectively expired on December 24, 1997, and not on March 25, 1998. Under this construction, the stated expiration date becomes meaningless. This brings these two clauses of the letter of credit into apparent conflict.

█ When the provisions of a contract appear to conflict they should be harmonized, if possible, to reflect the intention of the parties. Generally, the parties to a contract intend every clause to have some effect and the court will not strike down any portion of the contract unless there is an irreconcilable conflict. *Ogden v. Dickinson State Bank,* 662 S.W.2d 330, 332 (Tex.1983). When the provisions of a contract appear to be in conflict, the court should examine and consider the entire writing, seeking to harmonize and reconcile the conflicting provisions to the greatest extent possible. In achieving this objective, the court should favor such an interpretation that gives effect to all of the contract's provisions, so that none will be rendered meaningless and the contract's primary purpose will be effectuated. *Manzo v. Ford,* 731 S.W.2d 673, 676 (Tex.App.-Houston [14th Dist.] 1987, no writ).[4]

█ In Texas, a writing is generally construed most strictly against its author and in a manner as to reach a reasonable result consistent with the apparent intent of the parties. If there are two possible constructions, a construction rendering the contract possible of performance will be preferred to one rendering its performance impossible or meaningless. A bank's letter of credit is construed most strictly against the bank because that is who drafted it. *Temple–Eastex, Inc. v. Addison Bank,* 672 S.W.2d 793, 798 (Tex. 1984).

█ A reasonable interpretation, consistent with the language of the letter of credit at issue, that would harmonize all provisions is one that makes the condition providing for automatic decrease of the amount of Texas Commerce's obligation applicable only if *no* drawings had been made against the $750,000.00 as of the

---

4. These general contractual principles have been held applicable to letters of credit. *See*

*Westwind Exploration, Inc. v. Homestate Sav. Ass'n,* 696 S.W.2d 378, 382 (Tex.1985).

dates specified. In other words, Texas Commerce's obligation under the letter of credit would drop from $750,000.00 to $500,000.00 if the letter of credit was not "drawn against" on September 5, 1997, and would further drop to $250,000.00, if not "drawn against" on December 24, 1997. Its obligations under the letter of credit would expire on March 25, 1998, as stated. In this instance, since Eastman made proper presentation and a drawing of $250,000.00 prior to September 5, 1997, the condition would never occur and there would be no automatic reduction.

This interpretation is consistent with the language used in the letter, harmonizes the "condition" with the expiration date (making both dates significant, as the parties obviously intended them to be), is consistent with the actions of Texas Commerce's own employee who noted the bank's continuing obligation for $250,000.00 on the return to the presentment, is consistent with Texas Commerce's previous actions under the letter (in which it honored presentations by Eastman obviously not made on the exact dates specified in the condition), is an interpretation "strictly construed" against Texas Commerce (who drafted the letter), and is consistent with the intent of the parties as shown in other language of the letter of credit (i.e., that the credit would be drawn against only in the event of default by Whetstone Technologies on one of their three scheduled payments of $250,000.00 each, with Texas Commerce's potential liability declining by such amount if Whetstone did, in fact, timely make payments to Eastman Software).

We therefore conclude that Eastman was entitled to summary judgment for wrongful dishonor and that Texas Commerce was not entitled to summary judgment. Accordingly, we reverse the judg-

ment of the trial court, and in accord with our authority as stated in *Casa Ford, Inc.,* 951 S.W.2d at 876–77, render judgment in favor of Eastman in the amount of $250,-000.00, together with prejudgment interest at the rate of six percent per annum from January 25, 1998 (the thirtieth day after the date on which the principal sum was due and payable) to September 11, 1999 (the date of the trial court's final judgment),[5] attorney's fees in the amount of $85,000.00,[6] all costs of court, and post-judgment interest at the rate of ten percent per annum from the date of judgment until paid, for all of which execution may issue.

## OPINION ON REHEARING

Texas Commerce has filed a motion for rehearing. In its second point, it argues that our opinion and judgment in this case awards attorneys' fees without a properly presented issue.

The record in this case shows that both Eastman and Texas Commerce moved for summary judgment. (This was specifically noted by the trial court in its September 11, 1999, order.) In an order signed June 10, 1999, the trial court granted Eastman's motion for summary judgment in the amount of $250,000.00, plus reasonable attorneys' fees and expenses "to be determined by later submission." Texas Commerce filed a motion to reconsider on or about August 18, 1999. A hearing was held September 2, 1999, which included oral argument on the motion to reconsider, and also on attorneys' fees. At that hearing, the trial court announced orally that the court was denying the motion to reconsider. The court then, without taking formal evidence, discussed the amount of attorneys' fees. Counsel for Eastman asked for $108,000.00. After some discussion,

---

5. See *Republic Nat'l Bank of Dallas v. Northwest Nat'l Bank of Fort Worth,* 578 S.W.2d 109, 117 (Tex.1978) (opinion on reh'g), where the Texas Supreme Court, in another letter of credit case, reformed the judgment to reflect prejudgment interest to the date of judgment.

6. The parties agreed in their briefs and at oral argument that the amount of attorney's fees is not in dispute.

the trial court determined that $85,000.00 was an appropriate amount. At that same hearing, Texas Commerce advised the trial court that its own attorneys' fees were $60,000.00. Neither side put on sworn testimony regarding attorneys' fees, nor sought to examine the other party's attorney as to the amount claimed. Counsel for Texas Commerce did *argue* that $108,000.00 was excessive, but made no further objection or attempt to examine Eastman's attorney regarding the trial court's determination that $85,000.00 was appropriate. The trial court, on September 2, 1999, in the written final judgment, awarded judgment to Eastman, which included an award of $85,000.00 attorneys' fees, along with the amount of the judgment. The trial court then, *sua sponte*, in an order dated September 11, 1999, withdrew the original judgment and awarded summary judgment to Texas Commerce, plus attorneys' fees of $60,000.00.

In *Casa Ford, Inc. v. Ford Motor Co.,* 951 S.W.2d 865, 876–77 (Tex.App.-Texarkana 1997, pet. denied), we held, citing *Jones v. Strauss,* 745 S.W.2d 898 (Tex. 1988), that when both parties move for summary judgment in the trial court, with one motion being granted and the other denied, the appellate court is authorized to reverse the trial court judgment and render such judgment as the trial court should have rendered, including rendering judgment for the other movant.

We find the record contains no objections raised to the trial court's determination of either side's attorneys' fees. Both parties had the opportunity to make a record of objections and to present evidence, including calling the attorney for the opposing side as a witness to justify, under oath, their claimed fees. Neither side chose to do so and cannot be heard to complain now for the first time on appeal.

At the conclusion of oral argument before this Court, counsel for Texas Commerce were asked specifically whether they had any objection to the amount of attorneys' fees awarded to Eastman in the

original judgment of the trial court. Counsel indicated they had no such objection. They are now estopped from doing so.

The motion for rehearing is overruled.